**Alven MILTON, Jr., Libellant,**

v.

**The PURE OIL COMPANY, in personam, and THE SS DAVID D. IRWIN, her engines, etc., in rem, Respondents.**

No. 7841.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 25, 1958.

Louis B. Fine and Howard I. Legum, Norfolk, Va., for libellant.

Willcox, Cooke, Savage & Lawrence, T. Lanier Sawyer, Norfolk, Va., Joaquin Campoy, New Orleans, La., for respondents.

5. 8 U.S.C.A. § 1253(a) (1), (2).

**WALTER E. HOFFMAN**, District Judge.

Libellant has instituted this action under the Jones Act, 46 U.S.C.A. § 688, and the general admiralty law, for damages, maintenance and cure arising from injuries allegedly sustained as a result of having been struck in the testicle by an allegedly defective buffer machine, while serving as a member of the crew of the David D. Irwin on or about May 5, 1957.

The libellant is a seaman, thirty-seven years of age, who has been going to sea for approximately twenty years. He has a long history of venereal disease and genito-urinary disorders. On April 29, 1957, prior to joining the respondent vessel, he reported to the United States Public Health Service Hospital at Norfolk complaining of a fever and headache. His temperature was 101.5 degrees. He was subjected to various tests, including an urinalysis, and was instructed to return the following day. On May 1, 1957, libellant again visited the hospital at which time a physician prescribed medication consisting of two tablets of mandelamine, four times a day for seven days, with instructions to return to the genito-urinary clinic in one week.

Two days thereafter, on May 3, 1957, libellant presented himself for employment aboard the David D. Irwin. He was immediately referred to a local physician for pre-employment physical examination. The nurse in the physician's office asked libellant whether he had been under the care of a doctor within the past three years, to which inquiry libellant replied by stating that he had last been under a doctor's care in October, 1956, when he underwent an operation for a hernia at the Public Health Service Hospital. It is libellant's contention that he was under no duty to report his recent visits to the hospital as the physician did not indicate that libellant was unfit for duty in merely instructing him to report back one week later and, furthermore, libellant then had no complaints.

Libellant signed aboard the vessel on May 3, 1957, as a deck maintenance man. He voluntarily worked Saturday, May 4, and Sunday, May 5, on an overtime basis. Apparently he sustained his injury on May 5, the details of which are vague, confusing and contradictory. The buffer machine rests on a rotating wire brush and is started by means of a switch. Libellant contends that, in order to turn on the switch, he was required to use both hands and, in so doing, the machine "kicked" and struck him in the testicle while he was in a crouched position. He states that the machine was defective earlier that morning and, on a prior occasion some months past, he had observed that the switch was defective and had complained to the boatswain.

The following morning, May 6, 1957, libellant complained to another seaman that he was unable to get out of bed, which fact was reported to the chief mate. Libellant exhibited his left testicle to the mate who observed that it was inflamed and approximately twice its normal size. Libellant advised the mate that he bumped his testicle in sliding over one of the manifold pipes he had been painting on Saturday. When asked by the mate why he had failed to report the injury, libellant replied that he did not believe it to have been serious. Later, when libellant was visited by the master, the injury was attributed to the defective buffer machine.

When the vessel arrived in Texas on May 8, 1957, libellant was taken to a physician who diagnosed his condition as "left orchitis and epididymitis". While libellant advised the physician that he had sustained a blow on the testicle a few days before, the physician found no signs of a traumatic injury and concluded that the condition was the result of an infection rather than trauma. Libellant was sent to the Public Health Service Hospital at Galveston where he was treated as an inpatient from May 8 to May 16 when he was discharged as fit for duty. Libellant was thereafter paid his transportation, wages and

subsistence, and was furnished air transportation back to Norfolk.

On May 20, 1957, at Norfolk, libellant signed aboard the SS Gulfstream, owned by Gulf Oil Corporation. Eight days later he again complained of pain in his left testicle. He was discharged at Boston on June 2, 1957, and reported back to the Public Health Service Hospital at Norfolk on June 4, where he was found to have a swollen left epididymis with his urine containing pus and blood. The diagnosis was stricture of the urethra and chronic posterior urethritis. He was treated as an outpatient until July 23, 1957, when he was again discharged as fit for duty.

While there is some suggestion in the evidence that libellant sustained a traumatic injury, it is apparent that the physicians so indicating had predicated their conclusions upon an acceptance of libellant's statement as to how the accident occurred. Indeed, Dr. Devine, an outstanding specialist in the field, stated that it would be impossible to determine whether the condition resulted from a trauma or infection unless the epididymitis had been examined immediately. The apparent observations of the condition would be identical in each instance. It would, at best, be speculative to determine the cause of the condition.

This Court is unwilling to accept libellant's theory of unseaworthiness or negligence and rejects the statement of facts as related by him. His general demeanor reflecting evasiveness and an unwillingness to reveal his physical condition pointedly suggest that libellant was not injured as a result of any defective buffer machine. The testimony adduced by respondents is to the contrary, and even libellant admits that there were no witnesses to the accident. His conflicting statement as to the cause of the injury as related to the chief mate on May 6, 1957, is significant. The first and second causes of action are dismissed for the reasons stated.

Assuming arguendo that libellant sustained an injury on board the David D. Irwin, he would ordinarily be entitled to maintenance and cure irrespective of the issues of unseaworthiness or negligence. The exception to this rule is in the case where a seaman fraudulently conceals something which he knows to be relevant, or which he can reasonably be charged with knowing. Ahmed v. United States, 2 Cir., 177 F. 2d 898, 900. The latter case involved an Egyptian seaman, with little understanding of the English language, who had been suffering from tuberculosis and was discharged as fit for duty in December, 1943. One week later, he signed aboard a vessel operated by Spencer Kellogg Company, where he served until January 19, 1944. He was then unemployed until April 18, 1944, when he signed on the S.S. Spencer Ashe. At no time had he volunteered information as to his prior treatment for tuberculosis. The tubercular condition became reactivated while serving as a member of the crew of the Spencer Ashe, and Ahmed sought maintenance and cure which was allowed; the Court noting that:

> "Under these circumstances * * it would be most unreasonable to expect an ignorant seaman, whose testimony shows how little he understood the English language, to disclose his hospital experience of four months before."

The Court also observed that had the seaman's condition been reactivated by his service on board the Spencer Kellogg ship, and had he sued that shipowner, "perhaps he could reasonably be charged with knowing that he ought to have disclosed that he was disobeying directions received from the New Orleans hospital only a few days before he signed on".

We are not here dealing with an ignorant seaman confronted with a language barrier, or one unaware of his true condition. Nor are we considering a mere failure to volunteer information. This is a case of deliberate misrepresentation of a material fact. Certainly,

if the physician conducting the pre-employment physical examination for respondents had been advised of the treatment then in progress at the Public Health Service Hospital, libellant would not have been employed at that time. Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, 23, is distinguishable on these grounds and, even in that case, it is said:

"If, for instance, he has lied to his prospective captain, he should be and is left to his own devices."

In Lindquist, libellant was discharged from the hospital following an operation, with a notation on the record that he should be able to return to work after one month. Exactly thirty days later he reapplied for his old job, but was not asked about his physical condition at the time he was signed on by the barge captain. He did not volunteer any such information. After endeavoring to work for a short period of time, the seaman was again hospitalized and sought maintenance and cure from the shipowner which was allowed by the court. The Third Circuit stated the seaman's duty required a disclosure of whatever the seaman, as an ordinarily prudent person, should have known was material to the risk. This Court agrees with such reasoning and, as applied to the facts herein, holds that the libellant knew, or should have known, that his condition at the time of his employment on respondent's vessel was material to the risk.

If we accepted the fact that libellant was injured on board the vessel, the proof is nevertheless insufficient to establish that any injury caused or aggravated the condition. Unless observed immediately, the symptoms are identical with respect to an infection or trauma. It would only be speculation as to whether the condition would or would not have developed irrespective of any injury. Furthermore, the misrepresentation or failure to disclose his existing condition deprived the shipowner of the opportunity of ascertaining the extent of his ailment; all of which would be pertinent in determining whether the condition was aggravated by a trauma. Passaro v. Norfolk & Western Railway, 4 Cir., 254 F.2d 716. Accordingly, the third cause of action seeking a recovery for maintenance and cure must be dismissed.

A decree in line with this opinion which, pursuant to General Admiralty Rule 46½, 28 U.S.C.A., is adopted by the Court in lieu of specific findings of fact and conclusions of law, will be prepared by proctors for respondents and, after presentation to proctors for libellant for inspection and endorsement, forwarded to the Court for entry.