Edward L. EVANS, Appellee,

v.

**BLIDBERG ROTHCHILD COMPANY,**
Incorporated, Appellant.

Edward L. EVANS, Appellant,

v.

**BLIDBERG ROTHCHILD COMPANY,**
Incorporated, Appellee.

**Nos. 10087, 10088.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 9, 1965.

Decided Sept. 15, 1967.

Gerald Rubinger, Norfolk, Va. (C. Arthur Rutter, Jr., and Amato, Babalas, Breit, Cohen, Rutter & Friedman, Norfolk, Va., on brief), for Edward L. Evans.

R. Arthur Jett, Jr., Norfolk, Va. (Jett, Sykes & Berkley, Norfolk, Va., on brief), for Blidberg Rothchild Co., Inc.

Before BOREMAN and BRYAN, Circuit Judges, and MAXWELL, District Judge.

BOREMAN, Circuit Judge:

Edward Evans, a seaman, recovered a judgment in the United States District Court for the Eastern District of Virginia against the shipowner, Blidberg Rothchild Company, for maintenance in the amount of $568.00. The shipowner appeals on the grounds that Evans knew of his illness prior to signing on for duty and willfully concealed it from the ship's doctor and officers. Evans appeals from the court's refusal to award him attorney's fees. We reverse the judgment awarding maintenance and dismiss Evans' appeal.

Evans signed aboard defendant's ship, the S. S. WELLESLEY VICTORY, in early July 1963. On July 3, 1963, he was given a pre-sign-on physical examination in connection with which he filled out a required report. In the report he was asked if he had ever had a nervous breakdown and he answered "No." He was also asked if he had been hospitalized in the past five years and, if so, to state for what purpose. Evans answered this query by stating that he had suffered a sprained back. The last paragraph of the report, under which Evans affixed his signature, read as follows:

"I REALIZE THE TRUTH OF THESE STATEMENTS IS NECESSARY TO DETERMINE FITNESS FOR DUTY AT SEA AND I KNOW THAT THE COMPANY CANNOT BE HELD RESPONSIBLE FOR PRE-EXISTING PHYSICAL DISABILITY OR EXAGGERATION OF SAME THAT MAY ARISE WHILE EMPLOYED EVEN THOUGH SHOWN ABOVE. I HEREBY REPRESENT TO THE COMPANY THAT TO THE BEST OF MY KNOWLEDGE I AM ABSOLUTELY PHYSICALLY AND MENTALLY FIT FOR EXTENDED SEA DUTY."

On October 22, 1963, Evans left the ship and on October 24 entered the United States Public Health Service Hospital at Norfolk as an outpatient for treatment of a severe depressive condition which is a form of nervous disorder. He was not declared fit for duty until January 3, 1964. He subsequently brought this libel seeking maintenance and cure for the period from October 24, 1963, to January 3, 1964.

Trial was had in January 1965. Evans, being then at sea, did not appear at trial but additional time was granted to allow his attorneys to take his deposition. However, his deposition was not taken.

By way of defense to the libel, the shipowner introduced evidence, principally medical records, to show that Evans willfully concealed and misrepresented his condition. The records of the Public Health Service Hospital at Norfolk reveal that on June 16, 1961, Evans reported for examination of a depressed nervous condition. He was also seen on June

23, 1961, for his same disorder. In July 1961, while unfit for duty, he signed on S. S. OAKEY L. ALEXANDER. On July 24, 1961, he was removed from the ship and hospitalized in Spain because of his nervous and depressed condition. In August he was flown back from Spain and entered the Staten Island Public Health Service Hospital. He remained in the hospital until October 1961 when he was released but he was declared unfit for duty. Subsequently he instituted suit against the owners of the S. S. OAKEY L. ALEXANDER, claiming that conditions aboard the vessel caused his nervous breakdown. This suit was settled.

On October 18, 1961, Evans visited the Public Health Service Hospital at Norfolk and was noted to be suffering from the nervous condition. He was sent to Lexington, Kentucky, for special psychiatric care and examination and remained there until January 12, 1962, when he was released. However, he returned to Lexington on February 8, 1962. In June 1962 he was transferred back to the hospital at Norfolk.

On October 29, 1962, Evans signed aboard the USNS CACHE. He served only until November 6, 1962, at which time he left the vessel. He had suffered a fall which reactivated his nervous condition. From November 8, 1962, until April 18, 1963, Evans underwent further treatment for his nervous condition at the Public Health Service Hospital in Norfolk. On June 26, 1963, he was declared fit for duty by that hospital. It was a week later that he signed aboard the defendant's ship, stating that he had never had a nervous breakdown and that in the past five years he had only been hospitalized for a sprained back.[1]

The District Court, in an oral opinion, found "that there is no satisfactory proof of wilful fraud or misrepresentation." In reviewing the judgment of a District Court, sitting without a jury, in admiralty, the court of ap-

peals may not set aside the judgment unless it is clearly erroneous. A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. McAllister v. United States, 348 U.S. 19, 20, 75 S. Ct. 6, 99 L.Ed. 20 (1954); Scindia Steam Navigation Co., Ltd. v. Moon Engineering Co., 379 F.2d 928 (4 Cir. June 21, 1967).

Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel. The shipowner's obligation is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment. See generally Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 528, 58 S. Ct. 651, 82 L.Ed. 993 (1938); Norris, The Law of Seamen, § 536, pp. 576–77 (2d ed. 1962). The shipowner's duty does not rest upon negligence nor is it restricted to those cases where the seaman's employment is the cause of the illness or injury. Calmar Steamship Corp. v. Taylor, supra, and cases cited therein. Maintenance and cure may be awarded by the courts even where libelant was suffering from a pre-existing illness. Burkert v. Weyerhaeuser Steamship Company, 350 F.2d 826 (9 Cir. 1965); Couts v. Erickson, 241 F.2d 499 (5 Cir. 1957); Ahmed v. United States, 177 F.2d 898 (2 Cir. 1949).

However, where a seaman knowingly or fraudulently conceals his illness from the shipowner maintenance and cure will be denied. Burkert v. Weyerhaeuser Steamship Company, supra; Sulentich v. Interlake Steamship Company, 257 F.2d 316, 320 (7 Cir. 1958); Rosenquist v. Isthmian Steamship Company, 205 F.2d 486 (2 Cir. 1953); Tawada v. United States, 162 F.2d 615 (9 Cir.

---

1. Dr. Schuster, defendant's examining physician, testified that had he been advised of Evans' medical history he would not have approved Evans for hiring without first having obtained the opinion of a psychiatrist at the Marine Hospital despite the fact that Evans had a fit-for-duty slip.

1947); Milton v. Pure Oil Company, 165 F.Supp. 635 (E.D.Va.1958), aff'd per curiam, 264 F.2d 892 (4 Cir. 1959); Lindquist v. Dilkes, 127 F.2d 21 (3 Cir. 1942). See Annotation, 3 A.L.R.2d 1082.

In Tawada v. United States, supra, 162 F.2d 615, it was held that a seaman who signed on board a ship after he had knowledge of a tubercular condition was not entitled to maintenance and cure. The court held:

"We do not understand counsel for appellant [the seaman] to contend seriously that appellant is entitled to recover in the event the finding that Tawada was aware of and concealed his condition at the time he signed the shipping articles, can be sustained. The shipowner's liability for maintenance and care [sic] extends to seamen 'becoming ill or injured during the period of their service' (Aguilar v. Standard Oil Co. [of New Jersey], 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107), but that liability does not extend to a seaman who, with knowledge that he is afflicted with a disabling disease, conceals that fact and holds himself out as fit." 162 F.2d at 617.

■ Subsequently, in Burkert v. Weyerhaeuser, supra, 350 F.2d 826, the Ninth Circuit created a standard to be applied in determining whether a seaman who knows of a pre-existing illness is entitled to maintenance and cure. The test stated by the court is "whether the seaman, in good faith believed himself fit for duty when he signed aboard for duty." 350 F.2d at 831. However, the court pointed out that a seaman, as in *Tawada*, who possesses knowledge of an illness which would render him unfit for service, cannot possibly entertain such a good faith belief that he is fit. Furthermore, the court noted that "[w]here a seaman is asked to disclose pertinent information during a pre-hiring medical examination or interview and intentionally conceals or misrepresents material facts, he is not entitled to an award of maintenance and cure." 350 F.2d 830 n. 4. In remanding, the court emphasized

the fact that Burkert was not given a pre-hiring medical examination or interview, and he was not asked any questions concerning his physical and mental condition.

In Milton v. Pure Oil Company, supra, 165 F.Supp. 635, a seaman under a doctor's care at a hospital with a long history of venereal disease and genitourinary disorders signed for duty on defendant's ship. He misrepresented these facts and told a nurse, to whom the shipowner had referred him for a pre-employment examination, that he had undergone an operation for a hernia nine months prior. He bumped a testicle on board the ship and sought maintenance and cure. His claim was denied by the court which stated that "[t]his is a case of deliberate misrepresentation of a material fact. Certainly, if the physician conducting the pre-employment physical examination for respondents [the shipowners] had been advised of the treatment then in progress * * *, libellant would not have been employed at that time." 165 F.Supp. at 637–638. That decision was affirmed by this court in a per curiam opinion. 264 F.2d 892.

■■ Applying these authorities to the instant case, we reverse the judgment for maintenance below. Evans made two misstatements of fact which materially affected his eligibility for employment with the shipowner. In our opinion this is a case of deliberate misrepresentation. The fact that he had been recently discharged from the hospital where he had been treated for a nervous condition was fresh in his mind. In addition, he had brought suit against a shipowner claiming that his employment had caused a previous breakdown. He gave false answers to questions propounded on these matters, obviously intending to deceive. Therefore, we conclude that the court's finding in this regard is clearly erroneous. Since we reverse the judgment for libelant we dismiss his appeal involving disallowance of attorney fees.

No. 10,087 reversed.

No. 10,088 dismissed.