**James WACTOR, Darlene Wactor, Appellants,**

v.

**SPARTAN TRANSPORTATION CORPORATION, also known as Spartan Transportation Company, Appellee.**

No. 93–1537.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1994.

Decided June 23, 1994.

C. John Caskey, Baton Rouge, LA, argued (Robert A. Useted, W. Hugh Sibley and Richard D. McShan, on the brief), for appellants.

Gary T. Sachs, St. Louis, MO, argued (Jeanne Knowles Townsend, on the brief), for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and ALSOP,* Senior District Judge.

BOWMAN, Circuit Judge.

James Wactor and Darlene Wactor appeal the judgment of the trial court[1] in this maritime action for neck and back injuries suffered by James Wactor in April 1988, while he served as deckhand on the M/V Phaeton, a towboat working the Mississippi River. We affirm.

## I.

The jury rendered a verdict for the Spartan Transportation Corporation (Spartan) in this case brought by James Wactor under the Jones Act, 46 U.S.C.App. § 688 (1988), and general maritime law, for personal injuries sustained aboard Spartan's river towboat the M/V Phaeton. Before trial, the trial court dismissed as a matter of law Darlene Wactor's claim for loss of consortium, citing

*Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).[2]

Wactor claims that he was injured during the routine procedure of stopping a tow of barges in lock and dam seventeen on the upper Mississippi River. Wactor, other crew members, and two lockmen from the Army Corps of Engineers were in the process of stopping the barges along the lockwall when the lockline broke and hit Wactor in the neck or the head. In order to bring the barges to a halt, Wactor had placed the eye of the lockline on one end of the kevel, a deckfitting at the stern of the towboat, and then handed the end of the line to the lockmen standing on the lockwall. The lockmen placed the line on a "pin" and then handed it back down to Wactor. Wactor then wrapped the line around the kevel to bring the barges to a stop.

Wactor claims he made no more than two figure-eight wraps around the kevel and that in this position the line should have been able to feed through the kevel to bring the barges to a gradual stop. The line did not feed through the kevel; instead, it fouled. Wactor attempted to loosen one of the figure-eight wraps and slack-off the line, but the line broke against the weight of the moving barges and struck Wactor. Wactor claims that the breakage and his subsequent injuries were caused by the worn condition of the lockline. Spartan contends that the lockline was not in an unsafe, unserviceable, or unseaworthy condition and that the lockline broke because it was wrapped too many times around the kevel. The lockmen, to whom Wactor handed the line before wrapping it around the kevel, testified at trial that they told Wactor to "slack-off" the line when they saw him wrapping it more than two times, and possibly as many as six times,

---

* The HONORABLE DONALD D. ALSOP, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Catherine D. Perry, United States Magistrate Judge for the Eastern District of Missouri, Eastern Division, who conducted the proceedings by consent of the parties pursuant to 28 U.S.C. § 636(c) (1988 & Supp. IV 1992).

2. The question of whether *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), bars the spouse of an injured seaman from recovering damages for loss of consortium or society has not been addressed in this Circuit. As the jury found Spartan not liable for James Wactor's injuries, thus mooting any claim Darlene Wactor may have had against Spartan for loss of consortium, we decline to determine whether the pre-trial dismissal of this claim was proper.

around the kevel. Wactor did not heed their warning and the lockline broke almost immediately.

The jury found that no recovery by Wactor was merited because Spartan was not negligent and its locklines were not unseaworthy. The jury also found that Wactor concealed his previous neck and back injuries on his employment application, thus barring an award of maintenance and cure. Judgment was entered on the jury verdict, and this appeal followed.

## II.

■■■ Wactor first contends that the trial court violated Federal Rule of Evidence 609 in allowing the testimony of a psychiatrist, whose deposition on behalf of Wactor was read into evidence, to refer to Wactor's prior juvenile and adult criminal convictions as contained in a narrative history given by Wactor to the psychiatrist during an examination. We review for abuse of discretion a trial court's decision to admit, over objection, a party's criminal history into evidence. *United States v. Swanson,* 9 F.3d 1354, 1356 (8th Cir.1993). In this case, where the testimony of the psychiatrist was offered into evidence by Wactor, Wactor has no basis for an appeal.

Before the psychiatrist's deposition testimony was admitted into evidence, the trial court granted in part Wactor's motion in limine based upon Rule 609, ruling that the portion of the deposition regarding Wactor's 1979 felony and earlier juvenile convictions was admissible as part of the basis for the doctor's opinion, but forbidding argument using the convictions to impugn Wactor's credibility or to establish a defense to maintenance and cure. Tr.Vol. III at 56, 57. It was Wactor, however, who then chose to introduce the psychiatrist's deposition testimony into evidence, revealing Wactor's criminal history to the jury. *Id.* at 67–69, 76. In offering the deposition into evidence, Wactor invited the error that he claims resulted from his own witness's testimony and thus cannot now argue that the trial court committed reversible error. *See United States v. Steele,* 610 F.2d 504, 505 (8th Cir.1979) ("It is fundamental that where the defendant 'opened the

door' and 'invited error' there can be no reversible error.") (quoted case citation omitted); *United States v. Pina,* 844 F.2d 1, 8 (1st Cir.1988) ("When allegedly inadmissible evidence is introduced due to the actions of the party seeking to exclude it, admission of that evidence does not constitute reversible error."); *cf. United States v. Brown,* 956 F.2d 782, 787 (8th Cir.1992) (declining to review the prosecution's use of the prior criminal convictions for impeachment purposes was precluded where a defendant moved before trial to exclude evidence of prior criminal convictions and was denied, failed to renew the objection at trial, and then proceeded to testify about the convictions on direct examination). We conclude that appellate review of this issue is not available to Wactor.

## III.

■■■ Wactor next contends that the trial court abused its discretion in allowing the testimony of the two lockmen from the Army Corps of Engineers to come in as lay opinion under Federal Rule of Evidence 701. Wactor contends that the testimony took the form of expert opinions that the lockmen were not qualified to give and that the trial court was not empowered to receive as "lay" opinion. We review the trial court's admission of opinion testimony for abuse of discretion. *Burlington N.R.R. v. Nebraska,* 802 F.2d 994, 1004 (8th Cir.1986).

Rule 701 requires that "[a] lay witness' [sic] testimony in the form of opinions or inferences need only be rationally based on perception and helpful to a determination of a fact in issue." *Id.* We have held that "[p]ersonal knowledge ... or perceptions based on industry experience [ ] is a sufficient foundation for lay opinion testimony." *Id.* We have adopted the Seventh Circuit's reasoning that: "in order to conclude that [lay opinion] testimony is admissible, the court must find that the witness' testimony is based upon his or her personal observation and recollection of concrete facts ..., and that those facts cannot be described in sufficient detail to adequately convey to the jury the substance of the testimony." *Kreuger v. State Farm Mut. Auto. Ins. Co.,* 707 F.2d

312, 317 (8th Cir.1983), *quoting United States v. Jackson,* 688 F.2d 1121, 1124 (7th Cir.1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1441, 75 L.Ed.2d 797 (1983) (alteration in *Kreuger,* bracketed alterations added). Therefore, an analysis of the events, in the form of an opinion, is necessary.

■ The testimony of lockmen Carson Peters and Michael Jeffcoat satisfies the requirements of Rule 701 for admission of lay opinion testimony and meets the standard adopted in *Kreuger.* At the time of trial, Peters and Jeffcoat had been lockmen for nine and six years, respectively. Each man stated that he had assisted hundreds, if not more, tows and barges through the locks and had inspected the locklines provided by each of the tows. In addition, both men testified that the process of stopping tows and barges with a lockline wrapped on the tow's kevel is a routine procedure. Thus, the lockmen were sufficiently qualified to give lay opinion testimony, based upon industry experience, regarding the condition of the lockline and the events each participated in and witnessed preceding Wactor's alleged injury. *See Farner v. Paccar, Inc.,* 562 F.2d 518, 528–29 (8th Cir.1977) (holding that lay opinion regarding the proper use of safety chains on truck suspension system had sufficient foundation to be admissible where witness had worked in the trucking industry for many years and also had experience with the specific truck model in question).

Both men testified that they personally saw Wactor place more than two wraps, and possibly as many as six wraps, around the kevel as they helped slow the barges against the lockwall. Their opinions, that wrapping the lockline more than two times was not correct procedure and that the excessive wraps subsequently caused the lockline to foul and break, were based upon their personal experience and observations and were helpful in explaining the significance of the warnings they called out to Wactor as they saw him place more than two figure eights on the kevel.

Further, their opinions consisted of much more than a gratuitous "short-hand rendition" of a situation that could be adequately described by a statement of the facts. *See*

*Kreuger,* 707 F.2d at 317. The condition of the lockline was a central issue at trial, as were the number and significance of the wraps around the kevel. Therefore, the lockmens' opinions, based as they were upon their years of personal experience, their personal inspection of the lockline, their participation with Wactor in the stoppage of the barges, and their positions as the sole eyewitnesses to the wrapping, fouling, and breaking of the line, were helpful to the jury in obtaining a clear understanding of the events giving rise to this action and in determining factual issues in question at trial. Thus, we cannot say the trial court abused its discretion in admitting what it characterized as the "classically 701 type testimony" of lockmen Peters and Jeffcoat. Tr. Vol. IV at 155.

■ Wactor also contends that the testimony of the lockmen was based upon inadmissible hearsay. We find this argument meritless. The trial court properly overruled Wactor's objections at trial, as the warnings shouted to Wactor by Jeffcoat and Peters were properly admissible as non-hearsay, *see* Fed.R.Evid. 801(d)(1)(B), offered to prove that Peters and Jeffcoat were not silent and thus to rebut Wactor's testimony that he received no warnings and that Peters and Jeffcoat made no statements of any kind before the lockline broke.

## IV.

■ The trial court gave a jury instruction regarding maintenance and cure stating that "[a] seaman who intentionally misrepresents or conceals medical facts from an employer while applying for work will forfeit his right to seek maintenance and cure if the misrepresented or non-disclosed facts are material to the employer's decision to hire him and there is a connection between the withheld information and the injury which is eventually sustained." Instruction No. 38. Wactor contends that the trial court erred in giving this instruction, as it is an incorrect statement of the law. We find no merit in this contention.

Whether a seaman who fails to disclose material information concerning earlier injuries or medical conditions on an employment

**352**

application containing specific medical questions forfeits maintenance and cure when he later suffers a related injury or illness on the employer's vessel is an issue of first impression in this circuit.

 "Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel." *Evans v. Blidberg Rothchild Co.*, 382 F.2d 637, 639 (4th Cir.1967). The duty to pay maintenance and cure is not based upon negligence nor is it limited to those situations where the seaman's employment is the direct cause of the illness or injury. *Id.* Though very broad and rarely withheld, a seaman's right to maintenance and cure is subject to a few narrow exceptions. Where the seaman is required to provide pre-employment medical information and "the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure," if the injury incurred on the employer's vessel is causally linked to the concealed medical condition. *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 549 (5th Cir.), *cert. denied*, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968).[3] Standards similar to the *McCorpen* standard have been adopted by the Fourth Circuit in *Evans*, 382 F.2d at 639–40; by the Seventh Circuit in *Sulentich v. Interlake Steamship Co.*, 257 F.2d 316, 320 (7th Cir.), *cert. denied*, 358 U.S. 885, 79 S.Ct. 125, 3 L.Ed.2d 113 (1958); and by the Ninth Circuit in *Burkert v. Weyerhaeuser Steamship Co.*, 350 F.2d 826, 829 n.

4 (9th Cir.1965). We now adopt the *McCorpen* standard for this Circuit.[4] As the instruction given by the trial court in this case is consistent with the *McCorpen* standard, Wactor's claim of error must fail.

Oddly, Wactor also attacks the portion of the instruction requiring Spartan to show that the nondisclosed medical information was material to its decision to hire Wactor, even though this is an additional hurdle for Spartan to cross in defending against maintenance and cure.[5] As this portion of the instruction could not have been anything but helpful to Wactor, we see no reason to discuss it, other than to say we have no doubt that it is a necessary and correct part of a proper *McCorpen* instruction. *McCorpen*, 396 F.2d at 550 (hypothesizing that if the record was "absolutely clear" that the seaman would have been hired even if he had given correct medical information, then the seaman's nondisclosure would probably not bar maintenance and cure); *Quiming v. International Pac. Enters., Ltd.*, 773 F.Supp. 230, 236 (D.Haw.1990) (applying *McCorpen* and finding that to prevail on a maintenance and cure claim, defendant must show "(1) that plaintiff intentionally misrepresented or concealed medical facts; (2) that the undisclosed facts were material to the employer's decision to hire the plaintiff; and (3) that a connection exists between the withheld information and the injury complained of in the instant suit"); *Lancaster Towing, Inc. v. Davis*, 681 F.Supp. 387, 389 (N.D.Miss.1988); *Caulfield v. Kathryn Rae Towing*, 1989

---

**3.** In hiring scenarios where the seaman is not asked about his health or prior injuries, nondisclosure of such information will not be considered knowing or intentional if the seaman held a good faith belief that he was fit for duty and that the shipowner would not consider the past illness or injury important. *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548–49 (5th Cir.), *cert. denied*, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968).

**4.** In *Sammon v. Central Gulf Steamship Corp.*, 442 F.2d 1028, 1029 (2d Cir.), *cert. denied*, 404 U.S. 881, 92 S.Ct. 202, 30 L.Ed.2d 162 (1971), the Second Circuit stated that "the rule in the *McCorpen* case ... is not the rule of this Circuit." The *Sammon* court stated that the concealment of a pre-existing condition by the seaman during a pre-hiring interview "is fraudulent only if the

seaman knows or reasonably should know that the concealed condition is relevant." *Id.* According to the Second Circuit, even where the seaman failed to reveal a pre-existing condition in response to a question regarding "any earlier accident, injury or illness," he may claim maintenance and cure for a related injury or illness if he held a good faith belief, at the time he answered the question, that the pre-existing condition or earlier injury was not relevant. *Id.* at 1028. We are not persuaded by *Sammon*. As stated in the text, we adopt the less subjective *McCorpen* standard.

**5.** Given that the instruction is a correct statement of the law, the special interrogatory reflecting the instruction, which asked whether Spartan would have hired Wactor had it known the medical facts about his earlier injuries, was proper.

A.M.C. 1769, 1771, 1989 WL 121586 (E.D.La. 1989) (setting forth the three-point standard of proof originated in *Lancaster* and reiterated in *Quiming*); *Heartland Transp. Co. v. Massie,* 1986 A.M.C. 2528, 2531 (S.D.Ill. 1986).

The trial court did not err in giving the challenged instruction.

## V.

Wactor claims that the trial court erred in instructing the jury that he had a duty to exercise ordinary care to avoid injury on Spartan's towboat. Wactor concedes that the issue of his duty of care was never placed before the jury except in the context of Spartan's defense of contributory negligence. Because the jury found no negligence on the part of Spartan, it never was required to address the issue of Wactor's contributory negligence. We therefore need not, and do not, reach the question of whether the instruction regarding a seaman's duty of care constituted a proper statement of the law.

## VI.

We have considered all of Wactor's arguments and find them to be meritless. Accordingly, the judgment of the trial court is affirmed.