# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3567

_____

Robert N. Britton,                              *
                                                *
        Appellant,                      *
                                                *    Appeal from the United States
   v.                                     *    District Court for the
                                                *    District of Minnesota.
U.S.S. Great Lakes Fleet, Inc.,                 *
                                                *
        Appellee.                       *

_____

Submitted:  June 10, 2002

Filed: September 9, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY and MURPHY, Circuit Judges.

_____

HEANEY, Circuit Judge.

In this maritime law case, Robert N. Britton appeals the district court's order to grant summary judgment in favor of U.S.S. Great Lakes Fleet, Inc. ("Great Lakes").  He asks us to consider the following issues: (1) whether his failure to reveal an August 1997 back injury constituted a misrepresentation of his physical condition to Great Lakes, precluding an award of maintenance and cure; (2) whether his testimony regarding the number of available hands on deck at the time of his injury in order to prove negligence under the Jones Act and unseaworthiness was sufficient to create a genuine issue of material fact; and (3) whether Great Lakes is vicariously

liable for Dr. Roach's alleged failure to use due care in assigning Britton to return to work as a deckhand when a job assignment functional capacity test had not been performed. We reverse and remand for proceedings consistent with this opinion.

I.      Background

In late July or early August 1997, Britton, a thirty-five year old man, injured his back at work while performing heavy lifting. He did not seek immediate medical attention. On August 14, 1997, he was transported by ambulance to St. Luke's Hospital in Duluth because he was still experiencing back pain. He was discharged without having received a full neurologic examination, but his medical records indicate that the attending doctor suspected he suffered from disc herniation.

Shortly thereafter, Britton applied to work at Great Lakes, and on September 4, 1997, Great Lakes hired Britton as a deckhand. He underwent a post-offer medical exam on or near that date. He indicated on the medical history form that he had suffered previous back strain, but did not explain the circumstances of his August 1997 back injury.[1] Britton's physical exam indicated that he was fit for deckhand responsibilities. He commenced work on September 21, 1997, and was assigned as a deckhand/gate operator aboard the Cason J. Calloway.

_____

[1]On two separate pre-employment medical questionnaires, Britton was asked whether he had ever experienced a variety of listed conditions. He checked "no" where back injury, disc disease, and neck trouble were listed. He checked "yes" to indicate that he had applied for or received Workers Compensation payments, had had an operation, had been hospitalized, and had strained his back or experienced whiplash. The form instructed him to give details of the incidents checked "yes." He explained that he strained his back in 1987 and applied for or received payments at that time, and that he had been hit by a car and had surgery as a result. When Dr. Roach asked about his prior back injuries, Britton stated he had strained his back when he was hit by the car. He also allegedly stated that he had no residual problem from that injury.

On October 1, 1997, Britton sustained a back injury while at work. He filled out an accident report to place Great Lakes on notice of his injury, and continued to work as a deckhand without restrictions until he was injured again on August 17, 1999, which is the incident that is the subject of this lawsuit.

While at sea, the mate and bosun ordered Britton to open the stairwell covers and the vent hatches in preparation for loading coal. The stairwell covers are located on the main deck. Each cover weighs approximately 320 pounds and requires 160 pounds of force to lift. Each vent hatch weighs approximately thirty-five pounds and requires approximately thirty-three pounds of force to lift. Britton lifted one of the stairwell covers, and less than a minute later, he lifted a vent hatch. He felt two sharp pains in his lower back. He told the First Mate, and then, once off the vessel, he sought medical care from Dr. Richard Roach at St. Luke's Hospital in Duluth.

Dr. Roach determined that Britton suffered from a disc protrusion that displaced the S1 nerve root. He referred Britton to Dr. Richard Freeman, a neurosurgeon. Dr. Freeman performed a laser discectomy on Britton's back on May 9, 2000, and later referred Britton back to Dr. Roach for a determination as to whether Britton should return to work with Great Lakes. Dr. Roach performed a job placement assessment on June 6, 2000, and concluded that Britton's strength testing did not meet the requirements for work at Great Lakes. He referred Britton to a two-week course of "work hardening," apparently a physical therapy program. Upon Britton's completion of the work hardening course, Dr. Roach returned Britton to full duty without restrictions and without having performed another job placement assessment or functional capacity evaluation on Britton. Shortly after returning to work, Britton experienced pain in his lower back while lifting hatches and stopped going to work on September 6, 2000. Dr. Roach testified that Britton's back pain was aggravated by his deckhand activities.

Britton filed suit in district court, alleging that Great Lakes violated the Jones Act, 46 App. U.S.C. § 688, failed to maintain a seaworthy vessel, and is liable for his exacerbated back injury upon his return to work. He sought the general maritime law remedy of maintenance and cure for his injuries. Britton filed a motion for partial summary judgment, and requested that the court strike Great Lakes's affirmative defense that Britton's claims were barred due to his fraudulent misrepresentation of his medical history at the time of his pre-employment physical exam. Great Lakes sought summary judgment as well, arguing that there was no evidence to support Britton's allegations of negligence.

The district court determined that there was a dispute in material fact regarding Britton's alleged misrepresentations of his prior back injury, yet granted summary judgment in Great Lakes's favor after determining that Britton's injury was causally linked to his misrepresented or concealed condition, precluding an award of maintenance and cure. The court also granted summary judgment in Great Lakes's favor on the Jones Act negligence claim and the unseaworthiness claim because Britton failed to establish the number of hands on deck on the date of his injury. Finally, the district court held that Britton failed to present evidence that the doctors committed malpractice. Britton appeals.

II.    Discussion

We review a district court's grant of summary judgment de novo, evaluating the evidence in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact. See Fed.R.Civ.P. 56(c).

\

A.    Disclosure of Back Injury

"'Maintenance and cure' is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel." Wactor v. Spartan Trans. Corp., 27 F.3d 347, 352 (8th Cir. 1994) (quoting Evans v. Blidberg Rothchild Co., 382 F.2d 637, 639 (4th Cir. 1967)).  "The duty to pay maintenance and cure is not based upon negligence nor is it limited to those situations where the seaman's employment is the direct cause of the illness or injury."  Id. Although maintenance and cure is rarely withheld, a seaman's right to the relief is subject to a few narrow exceptions.  "Where the seaman is required to provide pre-employment medical information, and '[he] intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure,' if the injury incurred on the employer's vessel is causally linked to the concealed medical condition."  Id. (citing McCorpen v. Central Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968)).  However, the employer must show that the nondisclosed medical information was material to its decision to hire Britton to successfully defend against maintenance and cure. Wactor, 27 F.3d at 352 n.5.

Great Lakes asserts that Britton's failure to disclose the exact nature of his prior back injuries on the medical history form and during his post-offer physical examination renders him ineligible for maintenance and cure.  The district court concluded that Great Lakes sought such information, and that Britton's injury was causally linked to his previous back injuries.  Furthermore, Dr. Roach testified that had he known the extent of Britton's prior back injuries he would have ordered an MRI, and, pursuant to Great Lakes's policy, would have "obtain[ed] further studies on [Britton] . . . to qualify him for employment as a seaman."

Britton argues that the issue should have gone before a jury because his prior injuries would not have precluded Great Lakes from hiring him, so the undisclosed

-5-

information was not material. He also argues that he did disclose that he had: applied for or received worker's compensation benefits in the past; undergone an operation; been hospitalized; strained his back or had whiplash; been exposed to excessive noise at work; been exposed to dust, fumes, gas, or chemicals at work; smoked one to two packs of cigarettes a day; and typically drank four alcoholic beverages a day. Great Lakes hired him with this knowledge, and apparently without having examined Britton's medical records. The district court held that:

> whether or not Great Lakes would have hired Britton had it known of his prior back injury, it is beyond cavil that a back injury suffered three weeks before a pre-employment physical examination for a job as physically demanding as a deckhand is information that is important for Great Lakes to know. Thus, Britton's prior injuries were material information.

Britton v. U.S.S. Great Lakes Fleet, Inc., No. 00-2160 at 8 n.1 (D. Minn. Oct. 15, 2001) (Memorandum and Order). Yet, following the Wactor standard, Great Lakes has failed to show that it would not have hired Britton had he fully disclosed the medical facts of his back injuries. Britton has presented sufficient evidence to avoid summary judgment. We therefore reverse the district court's grant of summary judgment on this issue and remand for proceedings consistent with this opinion.

B.    Negligence Under the Jones Act

"The duty of a shipowner to pay 'maintenance and cure' . . . is not related to any finding of damages under the Jones Act." Stanislawski v. Upper River Servs, Inc., 6 F.3d 537, 540 (8th Cir. 1993) (citing Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527 (1938)). "Thus, a seaman is entitled to maintenance and cure payments in addition to any damages for negligence he or she might win under the Jones Act." Id.

"A Jones Act claim is an *in personam* action for a seaman who suffers injury in the course of employment due to negligence of his employer, the vessel owner, or crew members." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001). This action is premised on negligence, and the claimant may recover only if the shipowner negligently breached a duty toward him and he was damaged as a result. See Rutherford v. Lake Michigan Contractors, Inc. 132 F. Supp. 2d 592, 596 (W.D. Mich. 2000). In actions brought pursuant to the Jones Act, the burden rests on the plaintiff to present evidence of negligence. See Williams v. Nat'l R.R. Passenger Corp., 161 F.3d 1059, 1062 (7th Cir. 1998).[2] The basis of liability rests on a showing of negligence, not the fact that an injury occurred. See Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 437 (4th Cir. 1999).

Britton claims Great Lakes breached its duty to have sufficient crew on deck to assist Britton in his assigned tasks of lifting the stairwell cover and vent hatch, and that his back injury was within the range of foreseeable risks resulting from Great Lakes's negligence. Prior to Britton's accident, Great Lakes sent Captain Gapczynski a memo requesting that he reduce the number of overtime hours the crew was accumulating. Deckhands are typically called to stand watch twice in a 24-hour period. If they are called out on watch a third time in that 24-hour period, they receive overtime. Gapczynski implemented a "saving time" policy designed to reduce overtime hours by eliminating third watch calls. Britton alleges that as a result of this policy, only half of the deckhands were working on the date of his injury. Great

---

[2] 46 U.S.C. App. § 688(a) states that any seaman who suffers personal injury during the course of his employment is entitled to the rights and remedies available to railway employees. The cited railway cases are therefore helpful to our analysis here.

Lakes asserts that there is no evidence that this overtime policy was being implemented on that date.[3]

Because of the alleged shortage of deckhands, Britton asserts that he performed work that was too strenuous for one person to manage, resulting in his back injury. Britton testified that "they only had half the crew out there working;" they were "shorthanded;" and when asked whether he had requested assistance in opening the stairwell cover, he replied that "there was no one to ask." In response, Great Lakes asserts that Britton did not present the ship's logs, the testimony of his crewmates, or other evidence to support his claim.

Britton also submitted a request for admission from Great Lakes that "[t]here were no available deckhands to assist Plaintiff in lifting stairwell covers on August 17, 1999." Because the request was served after the discovery deadline, Great Lakes did not respond, believing it was not obliged to answer the request. Britton apparently believes that this was an admission to its having had an understaffed deck.

The district court noted that courts dispute whether requests for admissions are considered discovery and subject to discovery deadlines, but, without resolving the issue, it granted summary judgment in Great Lakes's favor. The court held that requests for admissions "are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law.'" (citing Lakehead Pipe Line

---

[3]Captain Michael Gapczynski stated that the entire deck crew "was available" at the time of the injury, and that as a matter of standard policy he called out the entire deck crew when the vessel reached Conneaut Harbor. He also stated that a watchman is on call 24-hours a day to assist the deckhands, and that he was available on August 17, 1999 to do so. Great Lakes concedes that at a minimum, half the deck crew was available that day, leaving unresolved how many people actually were on deck and able to assist Britton when he was ordered to open the vent hatches and stairwell covers.

Co., Inc. v. Am. Home Assurance Co., 177 F.R.D. 454, 458 (D. Minn. 1997)). The district court further held that, "the number of available deckhands is an essential fact that is very much in dispute, and thus was not the proper subject of a request for admission. [His claim] must therefore fail." Britton v. U.S.S. Great Lakes Fleet, Inc., No. 00-2160 at 6 (D. Minn. Oct. 15, 2001) (Memorandum and Order).

We disagree. Britton's conceivably untimely request for admissions is no reason to prevent the issue from proceeding to the jury. His testimony alone presents a dispute in material fact regarding the number of deckhands available to assist him on the day of his injury, even without the alleged admission. We therefore reverse and remand this matter for further proceedings.

C.     Alleged Unseaworthiness

"Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." Lewis, 531 U.S. at 441 (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960)). It is a cause of action distinct from Jones Act negligence, which can be found without a corresponding finding of unseaworthiness.

The warranty of seaworthiness, which extends to the plaintiff, requires that the ship, including the hull, decks, and machinery, "be reasonably fit for the purpose for which they are used." In re Matter of Hechinger, 890 F.2d 202, 207 (9th Cir. 1989) (citation omitted). Examples of conditions that can render a vessel unseaworthy include defective gear, appurtenances in disrepair, insufficient manpower, unfit crew, and improper methods of loading or stowing cargo. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499 (1971). The burden of proof in demonstrating unseaworthiness rests on the plaintiff, who must show by a preponderance of the evidence that the unseaworthiness was a proximate cause of the injury. Alvarez v. J. Ray McDermott & Co., Inc., 674 F.2d 1037, 1042 n.3 (5th Cir. 1982). Under these

circumstances, proximate cause means: "first, that the unseaworthiness . . . played a substantial part in bringing about or actually causing the injury; and two, that the injury was either a direct result of a reasonable probable consequence of the unseaworthiness." Id.

Britton alleges that the vessel was unseaworthy because there was a shortage of crew available to open the stairwell covers and vent hatches, and his having to perform those tasks alone resulted in his back injury. Great Lakes argues in response that Britton has failed to provide sufficient evidence to support his claim. As with his Jones Act claim, Britton's testimony alone created a genuine issue of material fact regarding the number of available crew on deck. A reasonable jury could conclude that Britton's injury was a direct result of the shortage of deckhands. We therefore reverse and remand this issue for further proceedings as well.

D.      Negligent Assignment

Britton alleges that the health care provider assigned by Great Lakes to treat his back injury failed to exercise due care in its reassignment of Britton back to work activities. Britton claims his untimely return to deckhand responsibilities exacerbated his back injury. Great Lakes argues in response that it does not have a contract with Dr. Roach, Dr. Freeman, or St. Luke's Hospital, where Britton was treated, and that "a shipowner who is not responsible for the initial injury cannot be held vicariously liable for the negligence of an independent physician." Alholm v. American Steamship Co., 144 F.3d 1172, 1180 (8th Cir. 1998).

"Where a physician certifies the employee as fit to return to heavy labor, it is not the employee's burden to show malpractice by the examining physician, rather it is sufficient to show that the railroad knew or should have known that the employee was unfit for the work because of his condition." Fletcher v. Union Pacific R.R. Co., 621 F.2d 902, 909 (8th Cir. 1980). "Most such cases find that the examining

physician was an agent of the railroad. . . . However, such a finding is not essential." Id. at n. 10.

The seamen employed with Great Lakes are required to have a physical examination prior to the beginning of their employment, at the beginning of "fit out" every year, and when returning to the job after having been injured. Dr. Roach, an internist who works in the occupational medicine department at St. Luke's Hospital, performs these exams on behalf of Great Lakes, though apparently not under a contractual agreement. Britton alleges that Dr. Roach was essentially "hired by" Great Lakes, and that Great Lakes is liable for Dr. Roach's negligent assignment of Britton to work activities beyond Britton's physical capacity, resulting in his repeated back injuries. There is no dispute that Britton's return to work as a deckhand aggravated his back injury.

Great Lakes argues that Dr. Roach and St. Luke's Hospital are among a "wide variety of health-care physicians in the Duluth-Superior area to which [Great Lakes] refers mariners." It also asserts that because Britton selected Dr. Freeman to perform aspects of his back treatment, Great Lakes cannot be vicariously liable for his recommendation that Britton return to work. However, it appears that Dr. Roach, not Dr. Freeman, had the final authority to release Britton to work. Further, it also appears that Dr. Roach did not perform a second job placement functional capacity evaluation to determine whether Britton was physically prepared to return to his deckhand responsibilities after completion of his work-hardening course. We therefore find that Britton has produced sufficient evidence to create an issue of material fact to allow his negligent assignment claim to survive a summary judgment motion and proceed before a jury. We reverse the district court on this matter as well, and remand for further proceedings.

III. Conclusion

For the reasons cited above we reverse and remand for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.