Fred ATKINS, Plaintiff,

v.

CROUNSE CORPORATION, Defendant.

Civ. A. No. 1119.

United States District Court
W. D. Kentucky,
at Paducah.

July 7, 1961.

recover the sum of $322,350. The suit arose out of an accident which plaintiff alleges occurred while he was employed by the defendant as a member of the crew of the M/V Hazel. The grounds for recovery were (1) that the M/V Hazel was not seaworthy on September 9, 1959, when the plaintiff sustained an injury; (2) that, under the Jones Act, the defendant negligently caused plaintiff's fall and injuries, and (3) that, in addition to the damages sought, plaintiff is entitled to maintenance and cure for medical expenses and hospital bills up to the time of the filing of the suit and thereafter as necessary.

The case was tried to a jury from October 26 through November 1, 1960, on the issues of fact with respect to the alleged unseaworthiness of the M/V Hazel and the defendant's negligence. The Court was to hear and determine the maintenance and cure phase of the case as a pure admiralty cause on the proof heard by the jury, with the right to the parties to introduce additional proof on maintenance and cure. The issues of negligence of the defendant and unseaworthiness of the vessel were submitted to the jury on seven interrogatories. The jury answered only the first three interrogatories, which resulted in a finding for the defendant on those issues.

Subsequently, on December 1, 1960, additional testimony was introduced to the Court on plaintiff's claim for maintenance and cure. The case was argued orally to the Court and has been briefed by counsel as recently as June 18, 1961. The entry of a final judgment on plaintiff's claims of defendant's negligence and unseaworthiness of the vessel awaits a determination of the issue of maintenance and cure, which will dispose of the entire case and enable a review, if desired to be had on one appeal.

The findings of fact and conclusions of law here are concerned solely with the question of maintenance and cure and it is immaterial whether the plaintiff's injuries resulted from the defendant's negligence, from the unseaworthiness of the vessel, or from his own carelessness.

William & Rivers, Paducah, Ky., for plaintiff.

Lord, Bissell & Brook, Chicago, Ill., and Boyd & Boyd, Paducah, Ky., for defendant.

SHELBOURNE, District Judge.

January 19, 1960, the plaintiff Fred Atkins filed this action in this Court against Crounse Corporation seeking to

The principal defense interposed by the defendant is that the plaintiff Atkins so misrepresented his physical condition and previous medical and surgical history to the defendant's medical examiner in his application for employment that he has precluded himself from the generous provisions which a ship owes to the members of its crew as maintenance and cure or maintenance and care.

### Findings of Fact.

From the testimony heard, depositions read, exhibits filed, and briefs of counsel, the Court makes the following findings of fact:

(1) The plaintiff Fred Atkins is, and was at all times involved in this proceeding, a citizen and resident of Paducah, Kentucky.

(2) The defendant Crounse Corporation is a Kentucky corporation engaged in the operation of towboats on the inland waterways of Kentucky and adjoining states, and at all times involved in this proceeding was the owner and operator of the M/V Hazel, its home port being Paducah, Kentucky.

(3) In June, 1959, plaintiff was employed by the defendant as cook and member of the crew of the M/V Hazel.

(4) September 9, 1959, while the M/V Hazel was docked at Hardinsburg, Kentucky, plaintiff was on duty as cook on the vessel and attempted to take a cup of coffee from the galley at the stern of the boat to the pilot in the pilot house atop the bow of the boat. While ascending a flight of steel steps from the lower to the upper deck at the stern of the vessel, or when he reached the top of the steps, plaintiff sustained a fall. A member of the crew found him at the foot of the steps in a semi-conscious or dazed state.

(5) Plaintiff was taken by ambulance to the Breckinridge Memorial Hospital at Hardinsburg, Kentucky, where x-rays were made and he was examined by Dr. John Allen Kincheloe. Dr. Kincheloe found no fractures, abrasions or contusions and plaintiff was removed from that hospital by ambulance to the Western Kentucky Baptist Hospital at Paducah, Kentucky.

(6) Upon his admission to Western Kentucky Baptist Hospital on September 9, 1959, the plaintiff Atkins became the patient of Dr. Merrill W. Fowler, physician and surgeon, and Dr. Samuel L. French, an orthopedic surgeon. On the day of his admission to the hospital Dr. Fowler made x-rays and the films disclosed no injury to the bony structure of plaintiff's body. In his examination of plaintiff on the same date, Dr. Fowler found no bruises, abrasions, or wounds. Plaintiff was discharged from that hospital September 21, 1959, but returned in an ambulance on the following day, September 22, and remained under the care and observation of Dr. Fowler and Dr. French until discharged September 25, 1959.

(7) September 27, 1959, plaintiff was sent by defendant to the Baptist Memorial Hospital at Memphis, Tennessee, where he became the patient of Dr. Richard L. DeSausseur, a neurosurgeon, and remained under his care until discharged from the hospital on October 6, 1959.

(8) The defendant paid plaintiff his wages to September 15, 1959, and maintenance at the rate of $5 per day up to and including October 21, 1959. In addition, defendant paid plaintiff's hospital and medical expenses at Breckinridge Memorial Hospital, Hardinsburg, Kentucky; Western Kentucky Baptist Hospital, Paducah, Kentucky; Baptist Memorial Hospital, Memphis, Tennessee, and Lourdes Hospital in Paducah where he went for a psychiatric examination at the request of the defendant.

(9) The plaintiff is now entitled, and will continue to be entitled in the future, to receive hospital and medical care from the United States Public Health Service without cost to himself.

(10) In June, 1959, the defendant desired to employ a cook as a member of the crew of the M/V Hazel. The plaintiff Atkins applied for the job and was referred to Dr. C. P. Orr for a medical

examination. In response to Dr. Orr's questions, plaintiff stated that he had never had an injury or a disease, minor or serious, to any portion of his body except his back; that he had undergone surgery for the back injury at the Eugene Clinic, Eugene, Oregon, in 1950 while employed by Pope-Talbert, but had had no trouble since.

(11) In April, 1955, plaintiff was an applicant for disability benefits as a result of his membership in the United States Army for less than 90 days. In connection with his claim for disability, he stated that he was perfectly well until 1949 or 1950 when suddenly he developed severe back pains radiating down his legs, which resulted from lifting logs; that in a hospital in Wichita, Kansas, he had an operation for removal of a herniated disc, and in 1952 he had two more operations for herniated intervertebral discs in Eugene, Oregon, but got little or no relief from these operations; that he had become addicted to narcotics for a time, and that he had incurred a numbness in his legs, especially his right one, which resulted in his falling quite frequently. This testimony was introduced by Dr. C. W. Gaskins, Chief of Surgical Service at the Veterans Administration Hospital at Poplar Bluff, Missouri. In his application for disability as a veteran, plaintiff stated that he had become totally and permanently disabled on November 14, 1952.

(12) While a patient in the United States Public Health Service Hospital at Memphis, Tennessee, in July, 1960, it was suspected that plaintiff's claim to partial paralysis on the right side, particularly his hand and arm, was pretended. During a series of examinations by Dr. Bernard S. Patrick, a neurosurgeon, by sedation plaintiff was slowly brought down to a level just above anesthesia; when Dr. Patrick held plaintiff's left hand and arm and imposed a painful stimulation to any part of his anatomy, plaintiff would reach for the examiner's hand with his right hand and forcefully remove the source of the pain. The testimony of Dr Patrick that this test conclusively demonstrated that Atkins' alleged paralysis in his right hand and arm was a hoax is undisputed. If the paralysis had existed, Atkins would have had no more power to move his right hand and arm under a partial anesthetic than in his normal state. This test convinced the examiner that the plaintiff was a malingerer and, on the whole case, the Court agrees with this conclusion and so finds.

(13) Good faith on the part of Atkins in applying for a job with the defendant would certainly entail upon him the duty to tell defendant's medical examiner of the injuries he claimed to have sustained which made necessary three spinal operations, his claim for total and permanent disability after his discharge from the United States Army, his frequent falls resulting from his legs giving out, and his previous addiction to narcotics. His failure to disclose these facts constitutes a knowing misrepresentation of his physical condition and medical history.

Conclusions of Law.

This Court has jurisdiction of the parties and of the subject matter of this action under its general admiralty jurisdiction.

■■ There is no longer doubt that the duty of maintenance and cure extends beyond the duration of the voyage and plaintiff is entitled to maintenance and cure whether his injuries resulted from his employment with the defendant or were caused by negligence on his part. However, the duty of the employer in this respect is neither unlimited nor does it require the impossible. If a disease should prove incurable or if his condition is caused by injuries sustained prior to his employment, then the duty of the employer is "to effect such improvement in the seaman's condition as may be reasonably expected to result from nursing care and medical treatment." Beyond this obligation there is no duty where the injury causing the disability was not caused by the seaman's service. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 530, 58 S.Ct. 651, 82 L.Ed.

993. To the same effect are Dobbs v. Lykes Bros. Steamship Company, 5 Cir., 243 F.2d 55, and Milton v. Pure Oil Company, D.C.Va., 165 F.Supp. 635.

 Atkins was treated and discharged from Western Baptist Hospital at Paducah, Kentucky, by Dr. Merrill W. Fowler, physician and surgeon, and Dr. Samuel L. French, an orthopedic surgeon. He was treated and discharged from the Baptist Memorial Hospital and the United States Public Health Service Hospital at Memphis, Tennessee, by competent physicians and neurosurgeons. In each instance plaintiff was discharged from the hospital after treatment because maximum recovery had been reached or because of the belief that he was malingering. Much of plaintiff's later efforts appear to be the result of his conversion complex.

One reassuring fact remains, that is, if Atkins is now or hereafter in need of further medical or surgical attention, he has only to apply to a United States Public Health Service Hospital where he is assured of hospitalization and treatment.

The plaintiff in this action does not resemble the often pictured ignorant seaman. Atkins has been a successful insurance agent, and at no time in his testimony did he leave the impression with the Court that he was not fully aware of his rights. It is not unreasonable to conclude that when he applied for a job with the defendant he knew that the past history of his injuries, operations, and claim for total and permanent disability should be made known. Lindquist v. Dilkes, 3 Cir., 127 F.2d 21. More damaging to his claim for maintenance and cure is the fact that in his physical examination he was asked material questions by Dr. Orr and failed to give completely truthful answers. Milton v. Pure Oil Company, supra; Sulentich v. Interlake Steamship Company, 7 Cir., 257 F.2d 316.

It is concluded that the plaintiff Atkins has failed to sustain his claim for maintenance and cure, and the defendant will tender a judgment on all phases of this action dismissing the plaintiff's complaint.