David McCORPEN, Appellant,

v.

**CENTRAL GULF STEAMSHIP CORPO-
RATION, Appellee.**

No. 25291.

United States Court of Appeals
Fifth Circuit.

May 16, 1968.

Rehearing En Banc Denied
June 21, 1968.

Certiorari Denied Oct. 14, 1968.

See 89 S.Ct. 223.

Sidney Ravkind, Houston, Tex., for appellant.

B. D. McKinney, Joseph D. Cheavens, Houston, Tex., for appellee; Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel.

Before RIVES, GEWIN and THORN-BERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant David McCorpen, a merchant seaman, brought a suit for maintenance against the Central Gulf Steamship Corporation. The case was tried by the court, which found that plaintiff was not entitled to recover maintenance of $312.00, attorneys' fees of $1,000, interest, and costs because he knowingly failed to disclose a pre-existing physical disability during his pre-employment physical examination. From the judgment entered in accordance with this finding, McCorpen appeals. We affirm.

During his twenty years as a merchant seaman, appellant had never been prevented from doing his work aboard ship because of illness; but he did have a history of diabetes dating from 1953. His diabetes required daily insulin shots and strict diet control. About eight months before joining the crew of appellee's ship *Green Lake*, he underwent a physical examination by the United States Public Health Service and was found to be fit for duty. On March 16, 1966, he joined the crew of the *Green Lake* as a third cook. As part of its hiring procedure, Central required applicants to take a pre-employment physical examination. In filling out the "Physical Examination Report & Record," appellant gave the following answers:

Injuries: back strain 1961

Illness: no

Surgery: no

Also, he affixed his signature to a statement reading, "I have never been injured, sick, or otherwise disabled except as stated above." At no time did he reveal to Dr. Caravageli or his staff that he is a diabetic. He was approved for employment and sailed with the *Green Lake* from Galveston, Texas to New Jersey and then to the Persian Gulf. Near Iran, the heat in the galley where Mc-Corpen worked became extreme and he began seeing double. He was treated twice by a doctor in India and at the end of the voyage was treated at a public health facility in Galveston. The trial judge found that he was hospitalized for diabetes control with a diagnosis of diabetes mellitus and "chronic anemia, etiology undetermined."

Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel. The shipowner's obligation is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment. Maintenance may be awarded by courts even where the seaman has suffered from an illness pre-existing his employment, but there is a general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner. See Evans v. Blidberg Rothchild Co., 4th Cir.1967, 382 F.2d 637; Burkert v. Weyerhaeuser Steamship Co., 9th Cir.1965, 350 F.2d 826; Annot., 3 A.L.R.3d 1082 (1965). In cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment. Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must dis-

close a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. If the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he will be liable for maintenance. He will be liable if it is found that there existed reasonable grounds for the seaman's good-faith belief that he was fit for duty. Burkert v. Weyerhaeuser Steamship Co., supra; Couts v. Erickson, 5th Cir.1957, 241 F.2d 499; Lindquist v. Dilkes, 3d Cir.1942, 127 F.2d 21; Lorensen v. Jenney Mfg. Co., D. Mass.1967, 155 F.Supp. 213. On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure. Evans v. Blidberg Rothchild Co., supra; Burkert v. Weyerhaeuser Steamship Co., supra, 350 F.2d at 829–830, n. 4; Sulentich v. Interlake Steamship Co., 7th Cir.1958, 257 F.2d 316; Ahmed v. United States, 2d Cir.1949, 177 F.2d 898; Diaz v. Gulf Oil Corp., S.D.N.Y.1965, 237 F.Supp. 261; Atkins v. Crounse Corp., W.D. Kentucky 1961, 196 F.Supp. 904; Milton v. Pure Oil Co., E.D.Va.1958, 165 F. Supp. 635, aff'd, 4th Cir.1959, 264 F.2d 892; Zackey v. American Export Lines, S.D.N.Y.1957, 152 F.Supp. 772; Hazelton v. Luckenbach Steamship Co., D. Mass.1955, 134 F.Supp. 525. Of course, the defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage. Hazelton v. Luckenbach Steamship Co., supra.

In Couts v. Erickson, supra, a nondisclosure case cited by appellant, this Court allowed maintenance to a seaman who had not voluntarily disclosed a history of tuberculosis. Since there was no pre-employment medical interview in which information about prior illnesses was solicited, the Court looked to the record to determine whether there were reasonable grounds for the seaman to believe in good faith he was fit for duty. It was found that there were reasonable grounds for such a belief because he had been discharged from the hospital as fit for duty and at the time of employment his tuberculosis was in a "quiescent, inactive, recovered state." 241 F.2d at 503. This holding is not determinative of the instant case, however, because here there was a pre-employment medical examination and also the applicant's medical history was solicited by the shipowner through a questionnaire. Thus, the issue for us is not whether McCorpen believed in good faith he was fit for duty but whether he was guilty of the kind of intentional concealment of a disabling illness that precludes an award of maintenance. Tested by this standard, his case is not so strong: In completing a form that was obviously designed to elicit information about past illnesses of importance, appellant failed to reveal his diabetes; further, there was a causal link between the concealed pre-existing illness and the illness incurred on ship.

Although maintenance has been denied in most of the true concealment cases,[1] it was allowed in Ahmed v. United States, supra, and in Diaz v. Gulf Oil Corp., supra, because in those cases the courts decided the seamen were so ignorant that it could not be said they knowingly concealed pertinent medical facts. In *Ahmed,* the Second Circuit examined the record and concluded the seaman could not have been expected to reveal a quiescent tubercular condition to the examining doctor inasmuch as he could barely understand

---

1. See Evans v. Blidberg Rothchild Co., supra; Sulentich v. Interlake Steamship Co., supra; Tawada v. United States, 9th Cir. 1947, 162 F.2d 615; Atkins v. Crounse Corp., supra; Milton v. Pure Oil Co., supra; Zackey v. American Export Lines, supra.

English. At the time he signed on the voyage in question, four months of good health had elapsed and he had twice been cleared by physicians as fit for duty. In *Diaz*, the district court found that the seaman did not knowingly conceal a disabling illness when he failed to disclose an asthmatic condition to the examining doctor. As that case bears some factual resemblance to the one before us, the critical fact finding will be quoted:

> However, in view of plaintiff's language difficulties * * * and the fact that he had just been advised by the U.S.P.H.S. that he was fit for duty, I cannot, in good conscience, find that plaintiff understood the question [about prior illnesses] in the way defendant now urges or engaged in culpable concealment.

237 F.Supp. at 264. Like Diaz, McCorpen had recently been cleared by the Public Health Service and might have believed in good faith he was fit for duty. Nevertheless, the trial judge found that appellant is a man of intelligence who can read, write, speak, and understand English and that he knew when he was examined by the physician for the *Green Lake* he was afflicted with a disabling disease, i. e., diabetes. Since this fact finding is not specifically challenged, we have no basis for saying appellant's failure to give information about his diabetes on the questionnaire was not a knowing concealment of the kind that precludes recovery of maintenance.

■ Counsel for the seaman advances two arguments in support of a contrary result. First, he asserts that the inquiry was not specific enough to suggest to McCorpen that he should reveal a condition of controlled diabetes. In our view, the district court's findings on this score have adequate support in the record and are not clearly erroneous. The seaman knew he was being asked about past as well as present disabilities because he said he had a back strain in 1961. In addition, the warranty to which he affixed his signature explicitly refers to past illnesses. Finally, he is intelligent enough to know that diabetes, even though in a controlled state, is not an insignificant ailment akin to a cold but is a serious medical problem that should be revealed by the person afflicted whenever he is asked about past illnesses by an examining physician.

■ The second argument is that the concealment of diabetes was of no consequence because the doctor would have passed McCorpen anyway. In this regard, the following testimony is relevant:

Q. Doctor, were you told by an applicant that he had had diabetes or had been a known diabetic for ten years, had been actively serving in the merchant marine during that period of time for ten years, but was under control by self-administration of insulin injections, had previously been examined by the Public Health Service some eight months previously and had been found fit, and had recently made a foreign voyage aboard another vessel with no difficulty at all, would you have any hesitancy in passing this individual for his physical service aboard the vessel for which you were examining?

A. [Dr. Caravageli] Most likely he would be passed on the basis of what you say.

R. 25. If it were absolutely clear from the record that appellant would have been passed for duty even if he had given truthful responses to the questions, we would be inclined toward a different result from the one we reach. However, the question posed by counsel for the seaman was a hypothetical one—hypothetical because he made the medical assumption that McCorpen's diabetes was under complete control and the factual assumption that there had been "no difficulty at all" on the previous voyage—and the answer given by the doctor was tentative—"most likely he would have

been passed on the basis of what you say." Moreover, other testimony by the same doctor tends to negative the idea that appellant would undoubtedly have been cleared even if he had given truthful answers:

Q. If you find out that the seaman does have diabetes, what do you do then?

Q. Doctor, is he automatically rejected, automatically accepted, or do you endeavor to make further inquiry?

A. We question the seaman further and endeavor to ascertain whether the seaman is a regulated diabetic, whether or not he is on a diet or medication, or combined or singularly, but we do try to ascertain whether he is well under control, for fear that he may have a diabetic episode or diabetic coma or complications of diabetic condition at sea.

\* \* \* \* \* \*

THE COURT: Well, if this diabetic condition had been revealed to you and you would have ever said he was fit for duty as a seaman, you would have investigated into his history of diabetes, and you would have made a notation about this condition and the keeping of it under control, and have advised his employer, would you not?

A. Yes, sir.

THE COURT: In fact, you don't know of anybody in America who hires anybody that ever runs an automobile even, or goes to sea as a seaman, that is a diabetic, or has a diabetic condition, that his employer is not given complete notice of it, is that correct?

A. That is right. Frequently many employers will not hire them.

R. 21–22, 26. Viewing the entire record, we think no certain answer can be given as to whether appellant would have been put on the ship even if he had told the truth.

The facts as found by the district court cannot support an award for maintenance and cure under the cases previously discussed. As these fact findings are not clearly erroneous but have adequate support in the record, the judgment is affirmed.

RIVES, Circuit Judge (dissenting):

I do not think that the evidence supports a finding that McCorpen intentionally concealed a disabling illness. His pre-employment examination posed questions in most general terms as to whether he had ever suffered any "illness" or "been sick." As a matter of common sense, such generality in questioning requires the exercise of judgment in answering for nearly every grown man has at some time "been sick" or suffered some "illness." McCorpen was not called on to reveal a condition which, in good faith, he did not think would affect his fitness for duty.

McCorpen's diabetes had been controlled by self-administered insulin shots and diet since its first diagnosis in 1953. During all of this time he had been going to sea and diabetes had never disabled him or given him any trouble. Seven or eight months before joining the crew of the *Green Lake* he had been found fit for duty by the Public Health Service. He continued to perform his duties aboard the vessel at all times. Dr. Caravageli conceded "that there are many, many merchant seamen out on the high seas that have diabetes," and that "most likely" if McCorpen had told him the same facts disclosed by the evidence as to McCorpen's diabetes "he would be passed."

To hold that such weak evidence can support a finding of intentional concealment of a disabling illness opens the door to create the exceptions, cause the delays and invite the litigations to which the seaman's right to maintenance and cure should not be subject. See Farrell v. United States, 1949, 336 U.S. 511, 516, 69 S.Ct. 707, 93 L.Ed. 850; Couts v. Erickson, 5th Cir.1957, 241 F.2d 499, 503. While the amount involved is

small, the implications of this holding as a precedent are far-reaching. I therefore respectfully dissent.

ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), subpar. (b), the Petition for Rehearing En Banc is denied.

RIVES, Circuit Judge.

I dissent.