LANDRIEU, Judge.
Defendant, Ocean Drilling and Exploration Company (hereinafter “ODECO”), appeals the judgment of the trial court reinstating maintenance and cure benefits to the plaintiff.[1] We reverse.
FACTS
On April 17, 1990, while assisting in the movement of equipment aboard the D/B OCEAN TITAN, a vessel owned by ODE-CO, the plaintiff, David Pichón, injured his back. Pichón alleges that a piece of equipment being moved aboard the vessel by a crane struck his right leg and knocked him down.
Prior to his employment with ODECO, Pichón had received treatment for lower back injuries on five separate occasions. In 1975, plaintiff suffered low back injuries in an automobile accident and received three months treatment. In 1984, he allegedly suffered back injuries in an accident aboard an RTA bus. On November 21, 1986, Pichón entered the New Orleans Veterans Administration Hospital complaining of low back pain and pain radiating down his left leg as a result of lifting a 150 pound object. Pichón again entered the New Orleans Veterans Administration Hospital on October 13, 1987 complaining of pain in the low back and left leg. On October 13, 1988, Pichón allegedly injured his lower back in a taxi cab accident and thereafter received treatment for a period of three months. Plaintiff filed lawsuits over the RTA and taxicab accidents seeking damages for injuries to his back. On the same day he had his pre-employment physical with ODECO, Pichón appeared in trial court in conjunction with his lawsuit against RTA.
*40 In his application for employment, signed February 21, 1990, Pichón stated that his physical condition was that of a person with a handicap. However, during his pre-employment physical with ODECO on February 22, 1990, Pichón denied having had any prior back injuries. After the accident, Pichón stated in his workmen’s compensation questionnaire that he had injured his back and leg but that he had never injured this area before.
From the date of the accident until December 6, 1990, ODECO paid Pichon’s medical bills and maintenance benefits at the rate of $15.00 per day. ODECO terminated these benefits on the basis that Pichón had reached maximum medical improvement. In addition, ODECO argues that the back injury pre-existed Pichon’s employment by ODECO and that Pichón willfully concealed his pre-existing back condition in the employment application.
Claiming that he has not reached maximum medical improvement, Pichón sought retroactive reinstatement of his maintenance and cure benefits in the trial court. He insists that the prior back injuries resolved themselves before he was hired by ODECO and that his failure to report them on his employment application resulted from his belief that the questionnaire sought information on continuing back problems.
After reviewing the pleadings, evidence, and testimony, the trial court reinstated maintenance and cure benefits at the previous rate of fifteen dollars ($15.00) per day, retroactive to December 6, 1990.
DISCUSSION
Under general maritime law, maintenance and cure is. an implied contractual compensation given to a seaman injured while in the service of his vessel. Provided he does not knowingly or fraudulently conceal an injury from the shipowner, such compensation may be awarded to a seaman suffering from an injury which pre-existed his employment. McCorpen v. Central Gulf Steamship Corporation, 396 F.2d 547 (5th Cir.1968), cert. denied 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968).
A seaman who intentionally misrepresents or conceals medical facts from his employer while applying for work will forfeit his right to seek maintenance and cure if the misrepresented or nondisclosed facts are material to the employer’s decision to hire him, and there is a connection between the withheld information and the injury which is eventually sustained. McCorpen, 396 F.2d at 549; Lancaster Towing, Inc. v. Davis, 681 F.Supp. 387 (N.D. Miss.1988).
It is clear that Pichón intentionally misrepresented his medical history. Therefore, our next inquiry is whether the misrepresented or concealed facts were material to ODECO in its decision to hire plaintiff.
Pichón applied for employment with ODECO as a roustabout, a position primarily involving manual labor. The required tasks place a significant amount of strain upon the human back and are physically demanding.
David Ducre, the personnel recruiter for ODECO, testified that Pichon’s past employment as a roustabout with ODECO made him a prime candidate for rehire. However, according to Ducre’s testimony, ODECO would have excluded Pichón from the next stage of the hiring process, the pre-employment physical, had the interview revealed his history of back sprains or injuries.
Dr. Ronald W. Martz, the physician who performed the pre-employment physical on Pichón, testified that simple pulled muscles on an applicant’s history do not cause him any concern. However, should an individual report more than two simple pulled muscles, he would recommend against hiring. Dr. Martz further testified he did not know anything about Pichon’s former back injuries. In fact, plaintiff’s previous history warranted a “D” rating on the physical, *41 which meant rejection.[2] ODECO avoids hiring anyone with a problem which can be aggravated by hard physical work.
If Pichón had been truthful, and ODECO and the doctors had been aware of plaintiffs history of repetitive back injuries, he would not have been hired. Accordingly, we conclude that plaintiffs intentional misrepresentations concerning his medical history were material to ODECO in its decision to hire Pichón as a roustabout.
Finally, we must determine whether there was a causal link between the information withheld and the injury of which the seaman complains in his suit against his employer.
Dr. Alonzo N. Diodene, Jr., plaintiffs first treating physician, testified that the complaints Pichón expressed, pain in the low back and the left leg, were consistent with the complaints he voiced to the doctor at the Veterans Administration Hospital. Dr. Diodene further stated that when he examined the plaintiff, he found no clinical evidence of a herniated disc. On Pichon’s last visit, November 21, 1990, Dr. Diodene opined plaintiff had reached maximum medical improvement and could return to work as a roustabout in December of 1990.
After his first physician was called to serve in the Persian Gulf, Dr. Kenneth Adatto became Pichon’s treating physician. He diagnosed a pathologic bulging disc at the L4-5 level as well as degenerative disc disease at the same location. According to his deposition testimony, a person with a history of recurring low back injuries is more susceptible to reinjury. He further testified that Pichon’s most recent injury, the April 17, 1990 accident, “was the straw that broke the camel’s back”. Since Pichón was at a point where he could no longer tolerate the pain, an anterior lumbar fusion was recommended.
Dr. Gordon Nutik testified by deposition that Pichon’s complaints, low back pain and pain down the left leg, were consistent with his 1986 and 1987 VA Hospital records. He performed an independent medical examination on behalf of ODECO and found Pichón had a bulging disc at L4-5, although he felt Pichón was suffering from a soft tissue strain of his lower back. Dr. Nutik opined that Pichón had reached maximum medical improvement and there was no indication for surgery.
After reviewing Pichon’s previous low back injuries and the injury he sustained to his low back on April 17, 1990, we find there is clearly a causal link.
Pichón intentionally misrepresented his back condition to ODECO, the misrepresentation was material to the company’s decision to hire him, and the injury complained of was causally connected to the one he concealed. Thus, the trial court’s findings to the contrary are clearly wrong. Accordingly, the judgment of the trial court is reversed and plaintiff’s claim for maintenance and cure benefits is dismissed.
REVERSED.

. Plaintiffs maintenance and cure claim was severed from his Jones Act and unseaworthiness claim.

. A history of repeated injuries to the low back makes it more susceptible and therefore at a higher risk of reinjury.