893 So.2d 909 (2005)
Harold YOUNCE
v.
PACIFIC GULF MARINE, INC. and ABC Insurance Company.
No. 04-CA-839.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2005.
Rehearing Denied March 8, 2005.
*910 Michael E. Holoway, New Orleans, LA, for Plaintiff/Appellant.
John H. Clegg, Daphne P. McNutt, McGlinchey Stafford PLLC, New Orleans, LA, for Defendant/Appellee, Pacific-Gulf Marine, Inc.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, THOMAS F. DALEY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The plaintiff, Harold Younce, has appealed the trial court's grant of partial summary judgment in favor of the defendant, Pacific Gulf Marine, Inc. For the reasons that follow we reverse.

FACTS:
This matter arises out of an accident that occurred on December 31, 1995 aboard the ship M/V Sugar Islander while plaintiff was employed by Pacific Gulf Marine, Inc. (hereinafter referred to as *911 PGM). Plaintiff filed suit to collect for injuries sustained in this accident and the trial court rendered judgment in his favor. This Court affirmed that judgment; the Supreme Court reversed and granted a new trial. Younce v. Pacific Gulf Marine, Inc., 01-546 (La.App. 5 Cir. 4/10/02), 817 So.2d 255; Younce v. Pacific Gulf Marine, Inc., XXXX-XXXX (La.10/4/02), 827 So.2d 1144. Prior to the new trial being held, PGM filed a Motion for Summary Judgment claiming that plaintiff forfeited his right to maintenance and cure because he intentionally misrepresented his medical condition during a medical examination just prior to beginning to work on the Sugar Islander. The trial court granted the Motion for Summary Judgment, denying plaintiff maintenance and cure benefits for his injury. After his Motion for New Trial was denied, plaintiff filed this appeal.

LAW AND DISCUSSION:
At the time of this accident, PGM had an agreement with the Seafarers International Union to supply personnel to work in unlicensed positions on its ships. Plaintiff came to be on the Sugar Islander because of his membership in the union. As part of the union rules and the agreement with PGM, in order for a seaman to be qualified to work on a ship, the seaman had to be certified "fit for duty." A seaman was certified to be "fit for duty" upon examination by a union physician who then issued a "clinic card" to the seaman as evidence that he was "fit for duty."
The evidence presented in this case shows that plaintiff was injured aboard another ship in April 1995 when he slipped and fell. He sought treatment for injuries to his neck sustained in that accident from Dr. Thomas Purser, III. Dr. Purser treated plaintiff for complaints of neck pain in June and July 1995. On July 31, 1995 he was released from Dr. Purser's care and told he could return to work. On August 3, 1995, plaintiff presented to the union physician in order to obtain a new clinic card so he could obtain work through the union. Shortly thereafter, he boarded the Sugar Islander as an "able bodied seaman." On December 31, 1995, plaintiff was injured when he was lifted up by, and then dropped from a metal cargo cage that was being hoisted up by a crane on a pier alongside of the ship. This appeal stems from plaintiff's suit to collect for injuries sustained in the December 31, 1995 accident. PGM filed a Motion for Summary Judgment claiming that plaintiff forfeited his right to maintenance and cure by concealing information concerning the injury and treatment for the April 1995 accident when he filled out the medical questionnaire when he presented for examination on August 3, 1995.
It is well settled that a Motion for Summary Judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086. Any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5 Cir.1988).
Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship. Hernandez v. Bunge Corp., 01-1201 (La. *912 App. 5 Cir. 4/10/02), 814 So.2d 783. The right to maintenance and cure is implied in the employment contract between the shipowner and the seaman; it is not predicated on the fault or negligence of the shipowner. Id. Maintenance and cure may be awarded even when the seaman has suffered from a preexisting injury; nonetheless, a seaman may forfeit his right to maintenance and cure when he fails to disclose, or misrepresents material medical facts, when asked in an employment application. McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547 (5th Cir.1968), cert. denied, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968). On summary judgment to prevail and have a maintenance and cure claim dismissed, an employer must prove three criteria: (1) the seaman intentionally misrepresented or concealed information concerning a prior injury or condition; (2) the information misrepresented or concealed is material to the employer's decision to hire the seaman; and (3) that there is a causal connection between the non-disclosed injury or condition and the injury and condition complained of in the instant suit. Lancaster Towing Inc. v. Davis, 681 F.Supp. 387 (N.D.Miss.1988).
In its Motion for Summary Judgment, PGM claims that plaintiff intentionally concealed his injury and treatment for the prior accident that occurred in April 1995, thereby forfeiting his right to maintenance and cure. In support of its motion, PGM points to the medical questionnaire completed when plaintiff was examined and received his clinic card on August 3, 1995. This document states that plaintiff "denies any injuries, broken bones or surgery since last exam." As the examining physician, Dr. Kweli Amusa explained in her deposition, the top portion of the first page of the physical examination report was filled out by the nurse after questioning plaintiff. Next to the line that reads "injuries and/or operations", the nurse wrote "denies any injuries, broken bones, or surgery since last exam." The second page of the document was filled out by plaintiff. He checked yes when questioned "have you ever had an injury or disorder of your back, neck or head?" Plaintiff signed both pages stating the above answers are true and correct. Dr. Amusa denied any knowledge of the April 1995 accident or medical care following the accident. Dr. Amusa testified that had she known of the prior accident and injury, she would have examined plaintiff's neck area more thoroughly. Dr. Amusa did not testify that she would not have certified plaintiff as fit for duty if she had knowledge of plaintiff's treatment by Dr. Purser.
The issue before us is whether plaintiff's signature on the physical examination report, which contains the language "denies any injuries, broken bones, or surgery since last exam" on page 1, along with a statement on page two that plaintiff has had an injury or disorder to his back, neck, or head is sufficient to prove intentional misrepresentation or fraudulent concealment of a medical condition to prevent plaintiff from receiving maintenance and cure. The evidence presented includes plaintiff's testimony that he thought since the injury he was being treated for by Dr. Purser occurred on a ship that these medical records were part of his file at the union and presumably Dr. Amusa was aware of them. After reviewing the evidence presented, we find that whether plaintiff intentionally misrepresented his medical condition or fraudulently concealed material information regarding his medical condition when he presented to get his clinic card on August 3, 1995 is a disputed question of fact. Because plaintiff admitted to having prior a prior neck injury and that the prior injury occurred *913 on a ship, we find there is a material issue of fact as to whether plaintiff fraudulently concealed his medical condition and should be deprived of maintenance and cure.
Additionally, it is not clear from the evidence submitted whether the prior injury and medical treatment by Dr. Purser even if disclosed would have prevented plaintiff from receiving a "clinic card." Dr. Amusa testified that she would have examined plaintiff's neck more thoroughly had she known of the injury. There was no testimony that she would not have certified him as fit for duty had she known of the prior injury and treatment by Dr. Purser. The evidence submitted also includes the deposition of Dr. Robert Barrack, who treated plaintiff for a knee injury in 1995. Dr. Barrack testified that on October 3, 1995 he examined plaintiff, discharged plaintiff, and gave plaintiff a "return to work slip".
In addition to proving plaintiff intentionally misrepresented or concealed information regarding a prior injury, the defendant must also prove the information regarding the prior injury was material to the employer's decision to hire plaintiff. We find that whether or not the prior injury would have affected PGM's decision to hire plaintiff is a disputed fact since the decision as to whether or not plaintiff was fit for duty did not rest with PGM, but with the union's physician, Dr. Amusa. Dr. Amusa has not taken the position that had she known of the prior injury and treatment, she would not have found plaintiff fit for duty but has only testified that she would have more closely evaluated plaintiff. Plaintiff was discharged from Dr. Purser and released by him to return to work. We cannot assume that simply because plaintiff had a prior injury that he would not subsequently be employed by PGM especially in this situation when his fitness for duty was not determined by PGM, but by Dr. Amusa.
Rulings regarding the right to maintenance and cure must be construed liberally because courts have traditionally viewed seamen as wards of admiralty. Although conditions have clearly changed since this concept was first introduced into law, the right of recovery for maintenance and cure has continued to be a fundamental component of the relationship between employees and employers in admiralty. See Deisler v. McCormack Aggregates, Co., 54 F.3d 1074 (3d Cir.1995).
For the foregoing reasons, the judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings.
REVERSED.
ROTHSCHILD, J., dissents with reasons.
ROTHSCHILD, J., dissents with reasons.
Because I find that summary judgment was correctly granted in this case, I must respectfully dissent from the majority opinion.
Plaintiff alleges that on December 31, 1995, he injured his neck, shoulder, back and knee in the course of his employment as a seaman aboard the M/V Sugar Islander. His employer, Pacific Gulf Marine, Inc., made payments for maintenance and cure to plaintiff through February 4, 1997. On January 2, 1998, plaintiff filed this petition against Pacific Gulf Marine seeking general damages as well as maintenance and cure benefits. Pacific Gulf Marine subsequently filed a motion for partial summary judgment on the issue of whether plaintiff was entitled to maintenance and cure. By judgment rendered on December 4, 2003, the trial court granted partial summary judgment in favor of defendant, *914 finding that plaintiff is denied maintenance and cure benefits for his neck and left shoulder injuries. Plaintiff filed a motion for new trial from this ruling, which was denied by the trial court on March 18, 2004.
As an initial matter, the appeal in this case was from a partial summary judgment rendered in favor of defendant. The record lodged in this Court does not contain a motion for appeal from this judgment, nor is there any indication in the record that the trial court certified this partial judgment as final and appealable as required by La. C.C.P. art. 1915(B). I therefore find initially that this Court does not have jurisdiction over this appeal, and the appeal should be dismissed.
Further, after a review of the record in this matter, I find no basis for reversing the judgment of the trial court. The record in this case conclusively establishes that plaintiff injured his neck and left shoulder in a previous accident in April of 1995. He was treated extensively by Dr. Thomas Purser, and Dr. Purser stated in his deposition that plaintiff had a probable herniated disc at the C5-6 and C6-7 levels. Dr. Purser's testimony shows the severity of Younce's complaints regarding his neck. The record indicates that plaintiff saw Dr. Purser over ten times in June and July of 1995. On July 31, 1995, Dr. Purser discharged plaintiff on his request. On August 3, 1995, four days later, plaintiff presented himself to the Union medical office to have his clinic card renewed. Subject to a collective bargaining agreement, the clinic card is necessary for a seaman to work aboard a vessel and evidences that he is fit for duty.
The record contains a copy of the physical exam report prepared on August 3, 1995 and signed by plaintiff, Harold Younce. This form states that Younce "denies any injuries, broken bones or surgery since last exam." Under the caption of present medical history, the form stated that Younce "denies any present medical problems." Further, the record clearly establishes that Younce failed to inform the physical examiner, Dr. K. Amusa, that he had recently been treated for neck injuries, and in fact had been discharged four days earlier.
In finding the existence of an issue of fact as to whether this evidence constitutes an intentional misrepresentation of his medical condition, the majority opinion relies on the fact that Younce responded "yes" when questioned whether he had ever had "an injury or disorder of your back, neck or head." However, Younce specifically indicated on the form that his present medical condition was good and he denied any injuries since his last exam one year earlier, notwithstanding the fact that he injured his neck in April of 1995 and was treated extensively until his request for a discharge four days earlier on July 31, 1995.
Further, the majority states that even if Dr. Amusa had been told by Younce about his recent medical history, it is unclear whether he would have received a clinic card on that date. However, in my view, this is not a material fact necessary for the resolution of this dispute. Although the law provides that maintenance and cure may be awarded when the seaman has suffered from a preexisting injury, the law also clearly provides that a seaman who intentionally misrepresents or conceals material facts from the employer during a pre-employment physical forfeits his right to maintenance and cure. Hernandez v. Bunge Corp., 01-1201 (La.App. 5th Cir.4/10/02), 814 So.2d 783, 791, writ denied, 02-1551 (La.9/30/02), 825 So.2d 1193; McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547 (5th Cir.1968), cert *915 denied, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968).
Dr. Amusa testified in her deposition that had she known about Younce's recent medical history with his neck, she would have performed a more thorough exam in this area. However, when Younce concealed the material facts regarding his recent injury and treatment, he prevented the physician from the benefit of knowing his medical history. The letter of the law prevents prohibits exactly this type of concealment, and the concealment in this case was material to Pacific Gulf Marine's decision to hire Younce. Further, the record shows that there is a causal connection between Younce's previous neck injury and the neck injury he complains of in this case.
I find that the record conclusively establishes that Younce forfeited maintenance and cure benefits for his neck and shoulder when he concealed the material facts regarding previous injuries from the medical examiner. Under these circumstances, I find the trial court correctly granted summary judgment in this case, and I would affirm the trial court's judgment.