**Orlando RAMIREZ, Plaintiff–Appellant**

v.

**AMERICAN POLLUTION CONTROL CORPORATION, Defendant–Appellee.**

No. 10–40911
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 14, 2011.

Michael Elton Pierce, Esq., Cory Daniel Itkin, Esq., Arnold & Itkin, L.L.P., Houston, TX, for Plaintiff–Appellant.

Nelson D. Skyler, Tarush R. Anand, Brown Sims, P.C., Houston, TX, for Defendant–Appellee.

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM: *

Plaintiff–Appellant Orlando Ramirez was injured while working as a deckhand for Defendant–Appellee. Ramirez brought suit against the defendant, seeking maintenance and cure for injuries suffered while serving on defendant's vessel. Defendant filed a motion for summary judgment asserting that Ramirez could not recover those benefits because he intentionally concealed preexisting injuries in his job application. The district court granted summary judgment in the defendant's favor. We AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

In 2006, Orlando Ramirez sought employment as a deckhand with American Pollution Control Corporation ("AMPOL"). In his application for employment, Ramirez stated that he had never had back, head, or neck trouble, never received workers' compensation for injuries, and never had any accidents or serious injuries. These representations were false. Ramirez had suffered back injuries in 1979 and 1986, suffered a neck injury in 2002, suffered back and neck injuries in a car accident in 2004, and had made at least three workers' compensation claims for injuries. On September 26, 2006, AMPOL hired Ramirez. On October 11, 2006, Ramirez slipped and fell while serving on the M/V AMPOL RECOVERY. Ramirez alleges that this fall injured him and caused him serious pain in his neck, shoulder, elbow, and wrist.

Shortly after his injury, Ramirez commenced a lawsuit against AMPOL, asserting liability under the Jones Act for his injuries (the "Jones Act lawsuit"). After a

---

* Pursuant to 5TH CIR R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

bench trial, the district court determined that Ramirez was forty percent at fault for his injuries, and awarded Ramirez $1,800.00 in damages for his lost wages. Ramirez appealed the district court's apportionment of fault, and this court affirmed the judgment of the district court. *Ramirez v. Am. Pollution Control Corp.,* 364 Fed.Appx. 856, 856 (5th Cir.2010).

Ramirez then filed the instant lawsuit against AMPOL, alleging that AMPOL had failed to meet its obligation to provide maintenance and cure for the injuries Ramirez suffered in the same accident. AMPOL sought summary judgment on Ramirez's maintenance and cure claim, arguing that Ramirez was collaterally estopped from relitigating whether he suffered his injuries while working for AMPOL, and alternatively arguing that Ramirez's concealment of his prior injuries barred his maintenance and cure claim pursuant to this court's decision in *McCorpen v. Central Gulf Steamship Corp.,* 396 F.2d 547 (5th Cir.1968). The district court concluded that AMPOL had successfully proven that Ramirez's claims were barred by *McCorpen* and granted summary judgment in AMPOL's favor. It did not address AMPOL's collateral estoppel argument. Ramirez has timely appealed.

## II. STANDARD OF REVIEW

This court "review[s] the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Cerda v.2004–EQR1*

*L.L.C.,* 612 F.3d 781, 786 (5th Cir.2010) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a).

## III. ANALYSIS

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Jauch v. Nautical Servs., Inc.,* 470 F.3d 207, 212 (5th Cir.2006) (per curiam). A shipowner's obligation to provide maintenance and cure benefits to an injured seaman is an implied term of a contract for maritime employment and "does not depend on any determination of fault." *Id.* However, pursuant to this court's decision in *McCorpen,* a shipowner is not obligated to provide maintenance and cure for injuries stemming from a preexisting condition if the shipowner proves that

(1) the claimant intentionally misrepresented or concealed medical facts;

(2) the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3) a connection exists between the withheld information and the injury complained of in the lawsuit.

*Brown v. Parker Drilling Offshore Corp.,* 410 F.3d 166, 171 (5th Cir.2005) (citing *McCorpen,* 396 F.2d at 548–49). There is no dispute that AMPOL has established prongs one and three of the *McCorpen* defense.[1]

---

1. Ramirez argues for the first time on appeal that there is no causal connection between his shoulder injury and the information he withheld regarding his preexisting back and neck injuries because the injuries are in different locations of his body. Ramirez waived this argument by failing to raise it before the district court, and we do not consider it. *See,*

*e.g., Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 339 (5th Cir.2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (citation and internal quotation marks omitted)).

On appeal, AMPOL argues that there is no genuine dispute over the materiality of Ramirez's injuries. "The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of [*McCorpen*] analysis." *Id.* at 175. AMPOL asked several specific medical history questions in the job application Ramirez submitted, including whether Ramirez had any previous operations, accidents, or broken bones and whether Ramirez had previously injured his back, head, or neck. As the district court observed, these questions were related to Ramirez's ability to perform the physically demanding work of a deckhand.

Nevertheless, Ramirez avers that there is a genuine dispute over the materiality of his preexisting injuries because testimony at the bench trial in his Jones Act lawsuit demonstrates that AMPOL would have hired him even if he had disclosed his preexisting injuries. *See Jauch,* 470 F.3d at 212 ("If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure."); *McCorpen,* 396 F.2d at 550 (same). Ramirez's cousin, Tony Galindo, was captain of the M/V AMPOL RECOVERY and asked AMPOL to hire Ramirez. Ramirez points to the following trial testimony by Clayton Humphrey, AMPOL's employee in charge of hiring and firing deckhands, as evidence that he would have been hired based on Galindo's recommendation:

> **Counsel:** You can't sit here and say, "No, I wouldn't have hired him even if I had known about the chiropractor in '79 and '86," you would have had to just evaluate it further, is that fair?

> **Humphrey:** Well, I still probably wouldn't have because—I mean, unless like you said, Tony—if Galindo pushed that fact that he wanted Mr. Ramirez on the boat to work with him as his deckhand, and if I had known about that, any of the preexisting injuries or conditions that he had, then, like I said, if I would have known we would have sent him to a different doctor for further evaluations.

> **Counsel:** So you cannot sit here in court and say, knowing what you know now, "I absolutely would not have hired Mr. Ramirez"; right?

> **Humphrey:** Like I said, the only way I would have, if Tony would have said, "Let's hire him. I'd really like to have him on there," then we would get further evaluation. But if you walked into my office and filled out an application and answered the same questions, that you had all those preexisting injuries, I would not hire you unless you've got somebody that is in my employment that can say, "He's a good guy. I'd like to have him working with me."

> **Counsel:** Didn't Tony Galindo already say that though?

> **Humphrey:** Yes, he directly told me this.

This testimony does not create a genuine dispute over the materiality of Ramirez's preexisting injuries. Humphrey did not state that he would have hired Ramirez based on Galindo's recommendation; rather, he stated that Galindo's recommendation entitled Ramirez to further medical examinations before a decision on employment. Prior to the above-quoted testimony, Humphrey stated that he would have sent Ramirez to another doctor for further examination, but would not have hired him based on his medical history. Humphrey also stated that Ramirez's medical problems would have prevented him from working on the M/V AMPOL RE-

COVERY at the beginning of the voyage on which Ramirez was injured. Furthermore, Humphrey testified that, if he had learned that Ramirez had misrepresented his preexisting injuries on his job application, Ramirez would have been terminated. Thus, Ramirez's injuries were material for purposes of the *McCorpen* defense because Ramirez's disclosure of his previous injuries "would have either prevented his employment, or at least delayed it, preventing his having been present . . . at the time of the accident." *Jauch*, 470 F.3d at 212–13; *see also Brown*, 410 F.3d at 175 (finding materiality where employer "based its hiring decision (at least, in part) upon whether applicants had [preexisting injuries]").

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.