# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2013

Lyle W. Cayce
Clerk

No. 12-31237

CARLOS HARDISON,

> Plaintiff – Appellant

v.

ABDON CALLAIS OFFSHORE, L.L.C.,

> Defendant – Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-2053

Before OWEN, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Carlos Hardison appeals a grant of summary judgment enforcing a settlement agreement between himself and Abdon Callais Offshore, LLC for personal injuries he sustained aboard a ship. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2011, Carlos Hardison injured his foot aboard a vessel owned by Abdon Callais. Hardison struck his foot on a milk crate he was using

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31237

to access his bunk. The resulting bruise worsened between June 19 and 26, prompting the ship's captain to send Hardison ashore for treatment by a physician under an arrangement with Abdon Callais. The physician was located in Golden Meadow, Louisiana, which was more than a ten-hour drive from where Hardison disembarked from the ship in Port Aransas, Texas. Following the visit with the physician, Hardison's employer directed him to go home. His sister drove him home from the company's Golden Meadow bunk facility on July 2. The following day, July 3, Hardison's sister took him to the LSU Medical Center emergency room in Shreveport, Louisiana.

Eventually, the physicians at LSU Medical Center amputated two of Hardison's toes and, after he filed this suit, his entire right foot and some of his lower right leg. This was apparently due to a lack of circulation to the lower part of the leg. That circulatory problem likely stemmed from Hardison's diabetes mellitus, with which he was diagnosed in 2002. From 2002 to 2008, Hardison treated his diabetes with daily injections of insulin. In 2008, though, he discontinued his insulin treatment. Two questions on his Abdon Callais employment application asked whether he had or had ever been diagnosed or treated for diabetes, and on both he had said "no."

Sometime between July 3 and August 18, 2011, Hardison engaged George Byrne to represent him in a suit against Abdon Callais for his injuries. On August 18, 2011, Hardison filed this suit against Abdon Callais based on negligence claims under the Jones Act and a claim that the milk crate's use as a climbing aid amounted to unseaworthiness. The suit requested future maintenance and cure[1] and damages for losing his toes. After evidence of Hardison's diabetes and his decision to discontinue treatment surfaced during

---

[1] Abdon Callais was already paying Hardison maintenance and cure when the suit was filed.

2

No. 12-31237

discovery, Abdon Callais moved for summary judgment as to the claim for maintenance and cure, relying upon a doctrine known as the *McCorpen* defense. *See McCorpen v. Cent. Gulf S.S. Corp*, 396 F.2d 547 (5th Cir. 1968). The defense relieves maritime employers of liability for maintenance and cure with respect to injuries to seamen who conceal pre-existing medical conditions. *Id.* at 549. The district court granted the motion on July 12, 2012 as to future maintenance and cure, but denied Abdon Callais' counterclaim to recover maintenance and cure already paid.

Trial on the remaining issues was to begin on August 13, 2012. During the week before trial, the parties reached an agreement on a settlement, including a gross payment to Hardison of $90,000. Counsel for both parties notified the district court of the settlement. The court held a hearing to put the settlement on record on August 14, 2012. Because of Hardison's mobility limitations, the district court arranged for him to participate in the hearing by telephone. The district judge first questioned counsel for both parties about the terms of the settlement while Hardison listened on the telephone. The judge then questioned Hardison to satisfy himself that Hardison authorized, accepted, and understood the terms and consequences of the settlement. The district judge explained that Hardison would receive the settlement documents in the mail. After he signed and returned the documents, Hardison would receive a check from Abdon Callais. When the documents arrived, Hardison took them to a local law firm, where he was advised not to sign them. He then discharged attorney Byrne, engaged his current attorney, and refused to sign the settlement documents or accept the payment.

On October 4, 2012, Abdon Callais moved for summary judgment to enforce the settlement. Hardison opposed the motion through his new counsel, arguing he had never agreed to settle the case. On October 30, Byrne's law firm intervened in the case, arguing that the settlement was valid and that it

3

No. 12-31237

was entitled to receive costs, fees, and compensation from the settlement. At a hearing on November 7, 2012, the district judge questioned all the parties, including Byrne as intervenor, regarding the validity of the settlement. The district court determined that the settlement was valid and granted the motion. Hardison now appeals this order as well as the district court's earlier grant of summary judgment with respect to the *McCorpen* defense.

## DISCUSSION

*A. Did Hardison Agree to Settle his Claim?*

Settlement contracts for injuries arising from general maritime law are governed by federal law. *See Borne v. A & P Boat Rentals No. 4*, 780 F.2d 1254, 1256 (5th Cir. 1986). "In the absence of a factual basis rendering it invalid . . . an oral agreement to settle a personal injury cause of action within the admiralty and maritime jurisdiction of the federal courts is enforceable and cannot be repudiated." *Strange v. Gulf & S. Am. S. S. Co., Inc.*, 495 F.2d 1235, 1236 (5th Cir. 1974). This is the case even when a party later refuses to sign the memorializing documents. *See Borne*, 780 F.2d at 1258, n. 2.

Hardison answered affirmatively three separate questions in the district court regarding whether he understood that he was to receive a gross settlement of $90,000 in exchange for relinquishing his claim against Abdon Callais. The colloquy between the district court and Hardison included the following statement: "by signing this release . . . you are completely exonerating or completely releasing the defendants."

Hardison argues that he is not bound by the settlement because he never actually signed the settlement documents. Further, he urges that he believed that the district judge's statement quoted above meant that the settlement itself was not valid until he actually signed the documents. Hardison alleges he was never told how much money he would receive net of fees and costs, but

provides support for this only in two affidavits sworn after he refused to sign the documents. The district court found these affidavits self-serving and therefore insufficient to support a genuine issue of material fact. We agree. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005).

Summary judgment is proper when there is no genuine issue of material fact. FED. R. CIV. P. 56. Because Hardison presents no other evidence tending to show he did not agree to settle, we agree with the district court that there is no genuine issue of material fact as to whether Hardison agreed to the settlement entered into the record on August 14, 2012. *See Strange*, 495 F.2d at 1236.

*B. Did Hardison Settle with Complete Understanding of the Agreement?*

"Seamen such as [Hardison] are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Borne*, 780 F.2d at 1256 (quotation marks and citation omitted). Thus, we analyze whether Hardison relinquished his claims for personal injury with "an informed understanding of his rights and a full appreciation of the consequences." *Id.* The party seeking enforcement of a settlement with a seaman bears the burden of showing that this inquiry is answered in the affirmative. *Id.* Among the factors we consider are whether the negotiations were at arm's-length and in good faith; whether counsel was competent; whether the plaintiff received sound medical and legal advice; whether there is any appearance of deception, coercion, or overreach; and adequacy of the settlement, but only to the extent that the settlement might be seen as so unfair that no seaman with a full understanding of his rights would have accepted it. *Id.* at 1256-57. "Absent an express district court determination on [whether the seaman settled with full understanding of his rights], we must review the record for ourselves or remand the case for such a determination." *Id.* at 1257.

No. 12-31237

The district court found that Hardison settled this case with a full understanding of his rights, but it did so without reference to many of the relevant factors. If the district court does not make specific findings of fact in support of this inquiry, we may make determinations based upon our own review of the record or remand for the district court to make such findings. *Id.* at 1257. Because the record is sufficient for us to analyze these factors, we will do so.

The record shows that the negotiations were typical of settlement negotiations; the parties negotiated while mindful of the eventualities of trial, the claims and defenses that would be presented, and the district court's pretrial evidentiary rulings. We conclude the negotiations were at arm's-length and were conducted in good faith by both parties.

As to the competency of counsel and the soundness of legal advice, Hardison makes numerous assertions. Hardison asserts both a conflict of interest and a number of disagreements with Byrne's representation of him. Hardison alleges that Byrne had a conflict of interest because he learned about Hardison's injury by way of a tip from the captain of another Abdon Callais ship and an investigator in Byrne's employ induced him to accept Byrne's representation in this lawsuit while he was in the hospital. Byrne disputes this, claiming he "signed up" Hardison after a meeting at his sister's home in Natchitoches, Louisiana. In any event, Hardison provides no factual support of either contention beyond the two post-dispute affidavits mentioned above.

Each of Hardison's allegations regarding Byrne's representation is aimed at some relatively small detail of Byrne's development of the evidentiary record. None of the allegations includes any explanation of how these specific decisions harmed Hardison in the settlement negotiations. Furthermore, many of the allegations attack Byrne's handling of the *McCorpen* defense argument, which had already been dismissed on summary judgment and

6

therefore was not relevant to the final settlement of Hardison's remaining claims. Regardless, this is not a malpractice case against Byrne. As is relevant here, we conclude his actions do not amount to incompetence that would call into question the validity of this settlement.

No party submitted any briefing on whether Hardison received sound medical advice during the settlement negotiations. Our review of the record discovers no basis to conclude he received less-than-adequate medical advice about the nature of his treatment at the time of the settlement. No party suggests that Hardison's decision to settle might have been influenced by any medical advice he was or was not receiving. Therefore, we conclude Hardison received the requisite level of medical advice in the course of making his decision to settle.

Hardison argues the settlement is deficient, but does not allege any deception, coercion, or overreach on the part of Abdon Callais. The employer contends the settlement was generous given some of the difficulties Hardison would have ultimately faced at trial. We find nothing in the record to suggest there was any deception, coercion, or overreach in the settlement process here.

Hardison does not argue that $90,000 was necessarily inadequate, though his attorney stated at the November 7, 2012 hearing that the $25,000 Hardison would receive net of costs and fees was not enough for the injuries he suffered. We have already mentioned that Abdon Callais argues that the settlement was fair in light of all of the issues and defenses that would be presented at trial. Our review of the record discloses no reason to believe the amount was so inadequate that a seaman might be said to lack "an informed understanding of his rights and a full appreciation of the consequences." *See Borne*, 780 F.2d at 1256. We conclude the settlement amount was adequate and supports a conclusion that Hardison accepted it with a full understanding of its terms and consequences.

No. 12-31237

Our independent review of the record supports a finding that Hardison entered into this settlement with a full understanding of its terms and consequences.  The district court did not err in enforcing the settlement.

*C. Does Local Rule 58.3.A of the Eastern District of Louisiana Apply?*

Hardison asserts the district court erred by not following its Local Rule 58.3.  The Rule establishes requirements for obtaining a "judgment based upon a joint stipulation and compromise" in a case involving a seaman.  E.D. LA. L.R. 58.3.A.  In such a case, the parties must make certain filings as well as participate in a hearing wherein the district judge questions the plaintiff to her satisfaction that the plaintiff understands the terms and nature of the settlement.  E.D. LA. L.R. 58.3.B, 58.3.C.  Finally, "[a] similar procedure *may* be followed if a seaman's case is compromised during trial."  E.D. LA. L.R. 58.3.D (emphasis added).

We can find no interpretation of Local Rule 58.3 in an opinion from a district court or this court.  By its terms, it only applies to cases in which the parties seek a judgment based upon a joint stipulation and compromise.  E.D. LA. L.R. 58.3.A.  Here, the parties did not settle pursuant to a joint stipulation and compromise prior to the filing of a complaint.  They settled during the pretrial course of a bona fide case.  This case falls into the permissive section of Local Rule 58.3, which does not require that the rule's formalities be used in seaman settlements.  We conclude Local Rule 58.3.A's filing and hearing requirements for joint stipulations and compromises are inapplicable in this case.  The district court did not err by not undertaking that Rule's formalities.

*D. Hardison's Claim Regarding the* McCorpen *Defense.*

Finally, Hardison claims the district court erred in applying the *McCorpen* defense.  Because we find there was a valid agreement, the prior

8

summary judgment ruling on the *McCorpen* defense is no longer relevant. We need not reach the issue of whether the district court properly applied *McCorpen* because "the actual merits of the case as presented by the pleadings [are] no longer of any consequence following" settlement. *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 34 (5th Cir. 1967).

AFFIRMED.