| ¶ SULLIVAN, Judge.
Mark LaPrarie appeals the trial court’s grant of summary judgment in favor of Parker Drilling Offshore Corporation (Parker), denying him maintenance and cure benefits. For the following reasons, we reverse.

Facts

In May 1998, Plaintiff went to work for Parker as a floor hand. Prior to going to work, he had to undergo an extensive pre-employment physical and was approved for “heavy to very heavy” work. At the time of the physical, he completed a pre-placement examination physical form which asked if he “ever had, or do you now have any of the following conditions: ... Past or Present Back and Neck Trouble ...” He answered “no,” which was incorrect; he had injured his back in a 1993 work-related accident.
After going.to work for Parker, Plaintiff regularly performed heavy work for almost one year without incident. On March 31, 1999, he injured his back in an accident at work. He filed this lawsuit, seeking damages and maintenance and cure under the Jones Act. After answering the lawsuit, Parker filed a motion for summary judgment, alleging that Plaintiff was not entitled to maintenance and cure benefits. After a hearing, the trial court rendered judgment in favor of Parker, denying Plaintiff those benefits. This- appeal followed.

Discussion

The basis of Parker’s motion is McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547, 548 (5th Cir.1968); cert. denied, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968), which affirmed the principle that a seaman will be denied maintenance and cure “where he knowingly and or fraudulently conceals [a prior illness] from the shipowner.” A distinction has developed between those situations where the seaman [ ¡Jails to offer information that has not been requested and those situations where information is requested but not provided truthfully. “[WJhere the shipowner requires the seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure .of which is plainly desired, then he is not entitled to an award of maintenance and cure.” Id. at 549. However, even when the seaman knowingly concealed material medical information, his employer cannot avoid paying maintenance and cure “unless there is a causal link between the pre-existing disability that was concealed and the disability incurred.” Id. at 549.
Parker established that Plaintiff suffered an injury to his back in 1993 for which he.sought treatment from Dr. John Jackson, a neurosurgeon, on two occasions in 1994 and that his failure to disclose his prior back injury was material to its determination of whether or not to hire him. To establish a causal connection between the 1993 injury and the 1999 injury, which were in the same area of the lower back, i.e., L4-5, Parker relied upon the deposition testimony of Dr. Jackson. In defense of the motion, Plaintiff argued that the evidence presented by Parker did not establish the criteria of McCorpen, pointing out portions of the doctor’s testimony which supported his position.
The trial court determined that Plaintiff intentionally concealed his prior back injury from Parker and that it was causally *151 connected to his March 1999 back injury, stating, “[t]he medical evidence indicates that the first injury weakened the disks [sic], and the subsequent injury caus[ed] it to rupture.” Summary judgment was granted in favor of Parker.
hln his deposition, Dr. Jackson testified that a March 8, 1994 MRI scan of Plaintiffs lumbar spine revealed a lumbar spine disc herniation at the L4-5 level and a possible mildly diffused bulge of the L5 SI disc. He described the bulge at L4-5, which was beneath a ligament, as “very minor.” According to Dr. Jackson, he advised conservative treatment with Plaintiffs family physician because there was an excellent chance of Plaintiff overcoming the disc and his symptoms. Plaintiff returned to him in May 1994 complaining of pain. Dr. Jackson explained that he could offer nothing but surgery to reheve his pain. Plaintiff never returned, and the record indicates that he did not receive any treatment for his back after May 1994 until the May 1999 accident.
The record does not contain Dr. Jackson’s complete deposition. One excerpt contains a partial question to him directed by Parker’s counsel and the doctor’s response which indicate that Dr. Jackson testified that the 1993 back injury made the L4-5 disc more susceptible to future injury. However, that question and answer are followed by a question and answer which indicate that Dr. Jackson did not believe that Plaintiffs 1993 injury made his back more susceptible to another injury.
The questions and answers at issue are:
By defense counsel:
Q. ... disc such that it makes it more susceptible to injury in the future?
A. Yes.
Q. Assume for me — and I know you don’t know anything about Mr. La-prarie’s subsequent medical history or care. Assume for me that after several months go by, he becomes more tolerant of his symptoms and, eventually, is not symptomatic. Even though he’s no longer having symptoms in his daily activities, based upon the injury that you examined and the results of the studies you previewed, would his L4-5 disc still not be more susceptible to injury than it was before the 7/20/93 accident?
A. I can’t say that, because I’ve had hundreds of the patients that — see, I thought the man could get over it without conservative treatment. And I even had a son — my son had one twice as big that got over it without conservative treatment and he’s doing all kinds of heavy manual labor.
(Emphasis added.)
With regard to the 1993 injury, Dr. Jackson also testified that the “odds were on [Plaintiffs] side” that he would recover completely with conservative care and without surgery. Last, he testified that Plaintiffs return to heavy manual labor “apparent without difficulty” bore out the accuracy of his prognosis.

Standard of Review

Appellate courts review summary judgments de novo, under the same criteria which govern a district court’s consideration of the appropriateness of summary judgment. See Potter v. First Fed. Sav. & Loan Ass’n of Scotlandville, 615 So.2d 318 (La.1993). Thus, appellate courts use the criteria used by trial courts when determining whether summary judgment is appropriate. Schroeder v. Board of Sup’rs, 591 So.2d 342 (La.1991). The appellate court must determine whether “the pleadings, depositions, answers to interrogatories, and admissions on file, to *152 gether with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ.P. art. 966(B). Summary judgment may be granted only if the mover has proved that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Despite the legislative mandate now favoring summary judgments, “factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the Isopponent’s favor.” Willis v. Medders, 00-2507, p. 2 (La.12/8/00); 775 So.2d 1049, 1050.

Conclusion

While Dr. Jackson testified that an injury to a disc makes it more susceptible to future injury, he would not agree that Plaintiff was more susceptible to future injury because of his 1993 injury. This is an inference, if not direct testimony, that, in Dr. Jackson’s opinion, Plaintiffs L4-5 disc was not more susceptible to future injury because of his 1993 injury. Dr. Jackson’s testimony created a material issue of fact which precludes summary judgment.

Decree

The judgment of the trial court is reversed. All costs of this appeal are assessed to Parker.
REVERSED.