[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 1, 2006
THOMAS K. KAHN
CLERK

No. 05-12813

D. C. Docket No. 03-01280 CV-ORL-19-JGG

WAYNE FREEMAN,
WAYNE'S WORLD, INC.,
Doing business as Heroe's Nightclub,

                                        Plaintiffs-Appellants,

    versus

TOWN OF EATONVILLE, FLORIDA,
J. MURPHY,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 1, 2006)**

Before EDMONDSON, Chief Judge, BIRCH and ALARCÓN,[*] Circuit Judges.

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

Plaintiffs Wayne Freeman and Wayne's World, Inc. ("Plaintiffs") sued the Town of Eatonville, Florida and J. Murphy, an officer in the Eatonville Police Department ("EPD"), alleging that Plaintiffs suffered damages from (1) false arrest and false imprisonment, (2) federal constitutional deprivations, and (3) negligence. The district court granted summary judgment for the Town of Eatonville and Officer Murphy ("Defendants"). Finding no reversible error, we affirm.

I. BACKGROUND

Plaintiff Wayne Freeman is the sole owner of co-Plaintiff Wayne's World, Inc., which does business under the name of Heroe's Nightclub ("Heroe's").[1] Heroe's is a nightclub with a maximum capacity of 700 people. The club offers music and dancing for its patrons, and approximately 70 percent of its income is derived from the sale of alcohol consumed on-site. On weekend nights, Heroe's opens its doors at 11:00 p.m. and operates until 4:00 a.m. or 5:00 a.m. Heroe's is the only nightclub in the area that operates past 2:00 a.m. And although Heroe's

---

[1]Heroe's has also been spelled "Hero's" in the briefs, but we will refer to the establishment as Heroe's in this opinion.

faces a mainly commercial street, immediately behind the club is a residential neighborhood.  In the five months before the incident at issue here, law enforcement was called to Heroe's about six to eight times to respond to fights or other disturbances, including gunshots fired near the club.  Since the incident at issue here, law enforcement has responded to several other incidents at Heroe's, including one in which someone was shot.

On Friday night/Saturday morning of Labor Day weekend in 1999, Heroe's attracted a large crowd.  In preparation for the holiday weekend -- during which Heroe's anticipated increased customer traffic -- Freeman "beefed up" security by hiring 15 private security guards (normally 12) and five off-duty, uniformed police officers (normally two or three).  Around 2:00 a.m., Officer Murphy and other EPD officers arrived at Heroe's to respond to a disturbance.  According to the sworn statements of three EPD officers who were on the scene, the EPD summoned at least three other law enforcement agencies to assist in responding to "several physical and verbal disturbances, including ones with gunfire" that had broken out in and around Heroe's.  By this time, 200-300 patrons had entered Heroe's, and a line of people waiting to enter, according to Freeman, was "wrapped around the block."

3

To quell the disturbance, Murphy reported that he was ordered by his superior to close the doors of Heroe's and to disperse the crowd.[2]  Officer Murphy was familiar with Freeman and Heroe's because Freeman had previously hired Murphy to perform off-duty security at the club.  Freeman stated that he first became aware of the decision to shut down Heroe's when he heard Murphy closing the club's exit doors.  Murphy then tried to close the front doors where Freeman was positioned to collect cover charges.

Officer Murphy told Freeman he was closing Heroe's.  Freeman then placed himself so that Murphy could not shut the club's doors.  Freeman asserts that Officer Murphy was "out of control, yelling" and "trying to slam the door."  Freeman contrasts his own conduct as completely in control.  Freeman said that the crowd nearest the door began to surge toward the entrance during Freeman's interaction with Murphy.  Murphy threatened to arrest Freeman if Freeman did not step aside from the club's doors.  Freeman responded to Murphy, "Do what you got to do."  Freeman claims he then complied with Murphy's request to step away from the door; Officer Murphy then arrested Freeman.

---

[2]Only Freeman has been deposed in this case.  The parties never contacted or deposed Murphy or the other officers or witnesses to the club's closing.  The only testimonial evidence offered at the summary judgment stage was Freeman's deposition, Officer Murphy's incident report and sworn charging affidavit, and the sworn statements of two other EPD officers who were at the scene.  For the purposes of summary judgment we -- as the district court did -- construe the facts in the light most favorable to Freeman.

Murphy took Freeman to Murphy's patrol car where Freeman sat for one to two hours while the officers dispersed the crowd. Freeman was charged with resisting an officer without violence, in violation of Florida Statutes section 843.02. Later, the charges were dropped. Heroe's remained closed for the remainder of that night (one and a half to two hours). When Heroe's reopened the next night, Freeman contends, the club attracted a smaller-than-expected crowd.

Plaintiffs sued Officer Murphy and the Town of Eatonville, asserting liability for false arrest and false imprisonment, negligence, and constitutional violations. The district court granted summary judgment for Defendants, concluding that Officer Murphy had probable cause to arrest Freeman, that Murphy was entitled to qualified immunity, and that the Town of Eatonville could not be liable because Murphy did not violate Freeman's rights. The district court later denied Plaintiffs' motion for rehearing.

## II. DISCUSSION

On appeal, Plaintiffs asserts that questions of material fact exist about whether Murphy and the other EPD officers were authorized to arrest Freeman and close Heroe's. Plaintiffs argue mainly for three questions of fact: (1) whether

there was gunfire; (2) whether there were "disturbances" around the club; and (3) whether the crowd was unruly. The district court -- purportedly construing the facts in Plaintiffs' favor -- found no genuine issues of material fact and granted summary judgment for Defendants.

We review de novo the district court's grant of summary judgment, applying the same standards as a district court. Kingsland v. City of Miami, 382 F.3d 1220, 1225 (11th Cir. 2004). We view the evidence and all factual inferences therefrom in the light most favorable to Plaintiffs and resolve all reasonable doubts about the facts in Plaintiffs' favor. Id. at 1226. Because Plaintiffs would bear the burden of proof at trial, Plaintiffs must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," show that genuine issues of material fact exist to be resolved at trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986). We are satisfied that the district court construed the record facts in Plaintiffs' favor. After review, we see no genuine issues of material fact sufficient to defeat summary judgment.

A. State Law Claims

Freeman makes claims under state law for false arrest, false imprisonment, and negligence.[3] Freeman was arrested for resisting an officer without violence in violation of Florida Statute section 843.02. Florida law provides, in part, that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." FLA. STAT. § 843.02. To support a conviction under section 843.02, the state must prove that Officer Murphy was engaged in the lawful execution of a legal duty and that Freeman's acts constituted obstruction or resistance of that lawful duty. Slydell v. State, 792 So. 2d 667, 671 (Fla. Dist. Ct. App. 2001).

If Officer Murphy had probable cause to believe that Freeman was resisting Murphy's efforts to execute a legal duty, then summary judgment must be affirmed. See City of Hialeah v. Rehm, 455 So. 2d 458, 461 (Fla. Dist. Ct. App. 1984) (concluding that an officer "is not liable for false arrest if he has probable cause (or substantial reason) to believe the arrested person was a committing a

---

[3]Freeman's claims for false arrest and false imprisonment are "distinguishable in terminology only." Johnson v. Weiner, 19 So. 2d 699, 700 (Fla. 1944). We discuss these claims together.

7

misdemeanor in his presence"). Probable cause exists when the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the totality of the circumstances, that the suspect has committed, is committing, or is about to commit an offense. Elliott v. State, 597 So. 2d 916, 918 (Fla. Dist. Ct. App. 1994).

Whether Officer Murphy was executing a legal duty when he closed Heroe's is a critical element to Defendants' argument for summary judgment. Florida law vests municipalities with the power to act to maintain order and to quell any disturbance or disorder. See FLA. STAT. § 14.022 (vesting in governor power to "take such measures and to do all and every act and thing which she or he may deem necessary in order to prevent violence . . . or to quell violence or any disturbance or disorder which threatens the peace and good order of society"); FLA. STAT. § 166.021 (extending to municipalities the right to exercise powers of the state, including those powers set out in section 14.022). Florida law also compels law enforcement officers to disperse "immediately and peaceably" crowds which are "unlawfully, riotously, or tumultuously assembled." FLA. STAT. § 870.04. And Eatonville Ordinance No. 96-03 makes it unlawful for a business to "knowingly permit, allow or suffer . . . [t]he place of business . . . to become

8

unreasonably disorderly or noisy with the premises so as to annoy or disturb persons off the premises of that place of business . . . ."

Freeman contends that his deposition testimony rebuts the facts laid out in the officers' statements and creates issues of material fact about whether Murphy and the other officers were executing a legal duty when they closed Heroe's. We disagree.

Even construing the facts in Plaintiffs' favor -- as we must -- there is no dispute that Heroe's, a nightclub with a history of disturbances, including physical disturbances and gunfire, attracted a large crowd late at night to an area bordered by residences. The officers stated -- without contradiction -- that they were called to Heroe's because of reports of "several physical and verbal disturbances, including ones with gunfire." Undisputed evidence shows that the crowd assembled outside Heroe's was sufficiently large and rowdy that officers from at least four law enforcement agencies took almost two hours to disperse the crowd. And although Freeman stated that he personally did not hear gunshots and did not observe a fight, he was unable to say that these events did not in fact occur. Under the circumstances, we conclude that sufficient undisputed evidence exists such that a reasonable police officer could believe he was lawfully executing a legal duty when he closed Heroe's.

9

Whether Freeman obstructed or resisted Officer Murphy's efforts to close Heroe's is the second element. For the arrest to be lawful, Murphy needed only to have had reasonable grounds to believe that Freeman was resisting Murphy's efforts to close Heroe's. See State v. Dwyer, 317 So. 2d 149, 150 (Fla. Dist. Ct. App. 1975). Freeman stated that he challenged Murphy's authority to close the club and stood in the doorway to prevent Murphy from closing the doors. Murphy asked Freeman to move; he warned Freeman that continued interference would result in arrest; and Freeman responded to Murphy by saying, "Do what you got to do." Freeman further stated that while he was engaged with Murphy, the crowd at the club's entrance moved in around the men before other officers came to assist Murphy.

Under the circumstances, a reasonable officer could believe that Freeman was obstructing efforts to close the club. Murphy therefore had probable cause to arrest Freeman. And because Murphy acted with probable cause, the arrest was lawful, and Defendants were entitled to summary judgment on Plaintiffs' state law claims.

B. Federal Constitutional Claims

Freeman also contends that his arrest and the temporary closure of Heroe's violated his constitutional rights to be free from unreasonable search and seizure and to due process.[4] We disagree.

1. Fourth Amendment. Freeman contends he was deprived of his Fourth Amendment rights against unreasonable search and seizure when he was arrested. The district court determined that Murphy was entitled to qualified immunity. Qualified immunity immunizes from suit police officers who, when acting within the scope of their discretionary authority, do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002) (quoting Lassiter v. Alabama A&M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)). To determine whether qualified immunity exists, we employ a two-step inquiry. First, we decide whether Murphy's acts violated the constitution. Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1278 (11th

_____

[4]Freeman, in his complaint, also charged Defendants with violating his right to equal protection. But Plaintiffs did not raise this issue in their briefs before this Court. The equal protection claim is therefore abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

11

Cir. 2004) (citing Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001)). If we conclude that no constitutional right was violated, our inquiry ends: then Murphy has done nothing wrong under federal law. But if we conclude that, under the assumed facts, federal law was violated, we then consider whether, at the time of the incident, every objectively reasonable police officer would have realized the acts -- given the circumstances -- did violate already clearly established federal law. Garrett, 378 F.3d at 1278-79.

We are satisfied that Officer Murphy was acting within the scope of his discretionary authority when he arrested Freeman and closed Heroe's. We must then consider whether Murphy, in the context of the assumed facts, violated Freeman's constitutional rights. Whether a defendant "has violated a constitutional right at all is, of course, a necessary concomitant to the question of qualified immunity: if a defendant has not violated the law at all, he certainly has not violated clearly established law." Rodriguez, 280 F.3d at 1345 (citations and quotations omitted). We have written that "[t]he existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." Kingsland, 382 F.3d at 1226. As we discussed above, Murphy had

12

probable cause to arrest Freeman.[5]  See Rankin v. Evans, 133 F.3d 1425, 1435

(11th Cir. 1998) (noting that "the standard for determining whether probable cause

exists is the same under Florida and federal law").  Because Murphy had probable

cause to arrest Freeman, Murphy can have no federal liability, and he is due

summary judgment.[6]

2.  Due Process.  Plaintiffs' due process claim similarly fails.  In McKinney

v. Pate, we wrote that "a procedural due process violation is not complete 'unless

and until the State fails to provide due process.'" 20 F.3d 1550, 1557 (11th Cir.

1994) (en banc) (citing Zinermon v. Burch, 110 S.Ct. 975, 983 (1990)).  Plaintiffs

could have pursued remedies in state court for lost profits or damages suffered by

the club's closure.  Plaintiffs therefore suffered no procedural due process

violation.  See Horton v. Bd. of County Comm'rs of Flagler County, 202 F.3d

1297, 1300 (11th Cir. 2000) (concluding that plaintiff's failure to pursue state law

---

[5]Murphy would be entitled to qualified immunity if he had only "arguable probable cause" to arrest Freeman. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1558 (11th Cir. 1993). That is, Murphy would be entitled to qualified immunity if "a reasonable officer could have believed that probable cause existed." Id. (citation and quotation omitted). This lesser standard is clearly met under the circumstances: Murphy had actual probable cause to arrest Freeman.

[6]In the alternative, we conclude that under the law at the time of Freeman's arrest, the purported unlawfulness of the arrest was not already clearly established; so Officer Murphy is due immunity.

13

claim is not dispositive; Fourteenth Amendment only requires that plaintiffs have opportunity to pursue relief in state courts).[7]

3. Municipal liability. Even when individual town officers are entitled to immunity, a town might still be liable if a plaintiff can demonstrate that the town had a policy or custom that led to a constitutional deprivation. See Monell v. Dep't of Social Servs. of City of New York, 98 S.Ct. 2018, 2037-38 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). But we make this inquiry only when a plaintiff has suffered a constitutional deprivation. See City of Los Angeles v. Heller, 106 S.Ct. 1571, 1573 (1986) (determining that the extent to which departmental regulations infringe on constitutional rights is irrelevant when no constitutional injury, in fact, occurred). In this case, we have concluded that Plaintiffs suffered no constitutional deprivation. We accordingly conclude that the Town of Eatonville was entitled to summary judgment on Plaintiffs' constitutional claims.

---

[7]To the extent Plaintiffs assert a violation of substantive due process, we decline to extend the concept of fundamental constitutional rights to encompass Plaintiffs' claims. And our analysis of the Fourth Amendment claim controls any cause of action Freeman, individually, may bring under the banner of substantive due process. See generally Graham v. Connor, 109 S.Ct. 1865, 1871 (1989) (concluding in police excessive force case that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").

14

## III. CONCLUSION

Freeman was not falsely arrested.  In performing his official duties, Officer Murphy violated no federal law and, if he did, was entitled to qualified immunity from suit.  And because Plaintiffs suffered no constitutional deprivation, the Town of Eatonville -- and Officer Murphy -- were entitled to summary judgment. The judgment of the district court is accordingly

AFFIRMED.